# EXHIBIT 1

STATE OF NORTH CAROLINA
COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

2020 SEP 22 A 11: 10

NORTH CAROLINA ALLIANCE FOR
RETIRED AMERICANS; BARKER
FOWLER; BECKY JOHNSON; JADE
JUREK; ROSALYN KOCIEMBA; TOM
KOCIEMBA; SANDRA MALONE; and
CAREN RABINOWITZ,

        Plaintiffs,

v.

THE NORTH CAROLINA STATE BOARD
OF ELECTIONS; and DAMON CIRCOSTA,
in his official capacity as CHAIR OF THE
NORTH CAROLINA STATE BOARD OF
ELECTIONS,

        Defendants, and,

PHILIP E. BERGER, in his official capacity as
President Pro Tempore of the North Carolina
Senate; and TIMOTHY K. MOORE, in his
official capacity as Speaker of the North
Carolina House of Representatives,

        Intervenor-Defendants.

No. 20-CVS-8881

**PLAINTIFFS' AND EXECUTIVE
DEFENDANTS' JOINT MOTION FOR
ENTRY OF A CONSENT JUDGMENT**

        Plaintiffs North Carolina Alliance for Retired Americans, Barker Fowler, Becky Johnson,

Jade Jurek, Rosalyn Kociemba, Tom Kociemba, Sandra Malone, and Caren Rabinowitz, and

Defendants Damon Circosta and the North Carolina State Board of Elections ("Executive

Defendants"), by and through counsel, respectfully move this Court pursuant to Local Rule 3.4

for entry of a Consent Judgment, filed concurrently with this Joint Motion. In support thereof,

Parties show the Court as follows:

1.     On August 18, 2020, Plaintiffs filed an Amended Complaint, seeking declaratory and injunctive relief to enjoin North Carolina laws related to in-person and absentee-by-mail voting in the remaining elections in 2020 that they alleged unconstitutionally burden the right to vote in light of the current public health crisis caused by the novel coronavirus ("COVID-19").

2.     Also on August 18, Plaintiffs filed a Motion for Preliminary Injunction seeking to:

(i)     enjoin the enforcement of the absentee ballot receipt deadline set forth in N.C.G.S. § 163-231(b)(1), (2), as applied to ballots submitted through the United States Postal Service (USPS) for the 2020 elections, and order Defendants to count all otherwise eligible ballots that are postmarked by Election Day and received by county boards of elections up to nine days after Election Day;

(ii)    enjoin the enforcement of the witness requirements for absentee ballots set forth in N.C. Gen. Stat. § 163-231(a), as applied to voters residing in single-person or single-adult households;

(iii)   enjoin the enforcement of N.C. Gen. Stat. § 163-231(b)(1) to the extent that it requires voters to pay for postage in order to mail their absentee ballots;

(iv)    order Defendants to provide postage for absentee ballots submitted by mail in the November election;

(v)     order Defendants to provide uniform guidance and training for election officials engaging in signature verification and instruct county election officials not to reject absentee ballots due to perceived non-matching signatures until the county officials receive such guidance and undergo training;

(vi)    enjoin the enforcement of N.C. Gen. Stat. §§ 163-226.3(a)(5), 163-230.2(c) and (e), 163-231(b)(1), and any other laws that prohibit individuals or organizations from assisting voters to submit absentee ballots or to fill out and submit absentee ballot request forms; and

(vii)   enjoin the enforcement of N.C. Gen. Stat. § 163-227.2(b) and any other laws that prevent county election officials from providing additional one-stop ("early") voting days and ordering Defendants to allow county election officials to expand early voting by up to an additional 21 days for the November election.

Plaintiffs filed a brief in support of their Motion on September 4, 2020.

3.    Since Plaintiffs moved the Court for preliminary injunctive relief, Plaintiffs and Executive Defendants have engaged in substantial good-faith negotiations regarding a potential settlement of Plaintiffs' claims against Executive Defendants.

4.    Following extensive negotiation, the Parties have reached a settlement to fully resolve Plaintiffs' claims, the terms of which are set forth in the proposed Consent Judgment filed concurrently with this Joint Motion.

5.    As set forth in the Consent Judgment and in the exhibits thereto, (Numbered Memos 2020-19, 2020-22, and 2020-23), all ballots postmarked by Election Day shall be counted if otherwise eligible and received up to nine days after Election Day, pursuant to Numbered Memo 2020-22. Numbered Memo 2020-19 implements a procedure to cure certain deficiencies with absentee ballots, including missing voter, witness, or assistant signatures and addresses. Finally, Numbered Memo 2020-23 instructs county boards to designate separate absentee ballot drop-off stations at all one-stop early voting locations and county board offices, through which voters and authorized persons may return absentee ballots in person.

6.    Plaintiffs and Executive Defendants further agree to each bear their own fees, expenses, and costs with respect to all claims raised by Plaintiffs against the Executive Defendants, and all such claims Plaintiffs allege against the Executive Defendants in this action related to the conduct of the 2020 elections shall be dismissed.

WHEREFORE Plaintiffs and Executive Defendants respectfully request that this Court grant their Joint Motion and enter the proposed Consent Judgment, filed concurrently with this motion, as a full and final resolution of Plaintiffs' claims against Executive Defendants related to the conduct of the 2020 elections.

Dated:  September 22, 2020

Marc E. Elias
Uzoma N. Nkwonta
Lalitha D. Madduri
Jyoti Jasrasaria
Ariel B. Glickman
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C.  20005
Telephone:  202.654.6200
Facsimile:  202.654.6211
MElias@perkinscoie.com
UNkwonta@perkinscoie.com
LMadduri@perkinscoie.com
JJasrasaria@perkinscoie.com
AGlickman@perkinscoie.com

Molly Mitchell
PERKINS COIE LLP
1111 West Jefferson Street, Suite 500
Boise, Idaho 83702
Telephone:  208.343.3434
Facsimile:  208.343.3232
MMitchell@perkinscoie.com

*Attorneys for Plaintiffs*

/s/ Alexander McC. Peters
Alexander McC. Peters, N.C. Bar No. 13654
Terrance Steed
North Carolina Dept. of Justice
Post Office Box 629
Raleigh, N.C. 27602
apeters@ncdoj.gov
tsteed@ncdoj.gov

*Attorneys for Executive Defendants*

Respectfully submitted,

By: _____

    Narendra K. Ghosh, NC Bar No. 37649
    Burton Craige, NC Bar No. 9180
    Paul E. Smith, NC Bar No. 45014
    PATTERSON HARKAVY LLP
    100 Europa Drive, Suite 420
    Chapel Hill, NC 27517
    Telephone:  919.942.5200
    BCraige@pathlaw.com
    NGhosh@pathlaw.com
    PSmith@pathlaw.com

    *Attorneys for Plaintiffs*

- 4 -

## CERTIFICATE OF SERVICE

I certify that I served the foregoing document by email to counsel for defendants, addressed as follows:

Alexander McC. Peters
N.C. Department of Justice
PO Box 629
Raleigh, NC 27602
apeters@ncdoj.gov
*Attorney for Defendants*

Nicole Jo Moss, N.C. Bar No. 31958
Cooper & Kirk, PLLC
1523 New Hampshire Avenue NW
Washington DC, 20036
nmoss@cooperkirk.com

Nathan A. Huff, N.C. Bar No. 40626
Phelps Dunbar LLP
GlenLake One
4140 Parklake Avenue, Suite 100
Raleigh, North Carolina 27612-3723
Nathan.Huff@phelps.com
*Attorneys for Intervenors*

R. Scott Tobin
TAYLOR ENGLISH DUMA LLP
4208 Six Forks Road. Suite 1000
Raleigh, NC. 27609
stobin@taylorenglish.com

Bobby R. Burchfield
KING & SPALDING LLP
1700 Pennsylvania Ave, N.W., Suite 200
Washington. D.C. 20006-4707
BBurchfield@KSLAW.com
*Attorneys for Proposed Intervenors*

This the 22nd day of September, 2020.

Narendra K. Ghosh

- 5 -

STATE OF NORTH CAROLINA      IN THE GENERAL COURT OF JUSTICE
COUNTY OF WAKE            SUPERIOR COURT DIVISION

|  |  |
|---|---|
| NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS; BARKER FOWLER; BECKY JOHNSON; JADE JUREK; ROSALYN KOCIEMBA; TOM KOCIEMBA; SANDRA MALONE; and CAREN RABINOWITZ, | No. 20-CVS-8881 |
| Plaintiffs, |  |
| v. | **STIPULATION AND CONSENT JUDGMENT** |
| THE NORTH CAROLINA STATE BOARD OF ELECTIONS; and DAMON CIRCOSTA, in his official capacity as CHAIR OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS, |  |
| Defendants, and, |  |
| PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate; and TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives, |  |
| Intervenor-Defendants. |  |

Plaintiffs North Carolina Alliance for Retired Americans, Barker Fowler, Becky Johnson, Jade Jurek, Rosalyn Kociemba, Tom Kociemba, Sandra Malone, and Caren Rabinowitz, and Executive Defendants Damon Circosta and the North Carolina State Board of Elections (collectively, "the Consent Parties") stipulate to the following and request that this Court approve this Consent Judgment. This Stipulation and Consent Judgment encompasses Plaintiffs' claims, which pertain to elections in 2020 ("2020 elections") and are premised upon the current public health crisis facing North Carolina caused by the ongoing spread of the novel coronavirus.

# I.

## RECITALS

**WHEREAS** on August 10, 2020, Plaintiffs filed a complaint, and, on August 18, 2020, Plaintiffs filed an amended complaint against Executive Defendants challenging the constitutionality and enforcement, during the 2020 elections, of: (1) North Carolina's limitations on the number of days and hours of early voting that counties may offer, N.C. Gen. Stat. § 163-227.2(b); (2) its requirement that all absentee ballot envelopes must be signed by a witness during the pandemic, as applied to voters in single-person or single-adult households, Bipartisan Elections Act of 2020, 2020 N.C. Sess. Laws 2020-17, § 1.(a) ("HB 1169") (the "Witness Requirement"); (3) its failure to provide pre-paid postage for absentee ballots and ballot request forms, N.C. Gen. Stat. § 163-231(b)(1) (the "Postage Requirement"); (4) laws requiring county boards of elections to reject absentee ballots that are postmarked by Election Day but delivered to county boards more than three days after the election, as applied to voters who submit ballots through the United States Postal Service, *id.* § 163-231(b)(2) (the "Receipt Deadline"); (5) the practice in some counties of rejecting absentee ballots for signature defects (the "Signature Matching Procedures"); (6) laws prohibiting voters from receiving assistance from the vast majority of individuals and organizations in completing or submitting their absentee ballot request forms, 2019 N.C. Sess. Laws 2019-239, § 1.3(a) ("SB 683"), (the "Application Assistance Ban"); and (7) laws severely restricting voters' ability to obtain assistance in delivering their marked and sealed absentee ballots to county boards, and imposing criminal penalties for providing such assistance, N.C. Gen. Stat. § 163-226.3(a)(5) (the "Ballot Delivery Ban") (collectively, the "Challenged Provisions");

2

**WHEREAS** the Complaint seeks to enjoin enforcement of the Challenged Provisions during the 2020 elections due to the ongoing public health crisis caused by the spread of the novel coronavirus (COVID-19);

**WHEREAS** the COVID-19 public health crisis is ongoing, and North Carolina remains under Executive Order 163, which contemplates a phased reopening of North Carolina but strongly recommends social distancing, Exec. Order 163, § 2.2, mandates mask wearing in most business and government settings, *id.* § 3.2, imposes capacity limits in most public-facing business and government settings, *id.*, § 3.2(e), prohibits mass gatherings, *id.* § 7, and states that "[p]eople who are at high risk of severe illness from COVID-19 are very strongly encouraged to stay home and travel only for absolutely essential purposes," *id.* § 2.1;

**WHEREAS** North Carolina remains under a state of emergency, declared by the Governor, "based on the public health emergency posed by COVID-19," Exec. Order 116, and under a federal disaster declaration statewide, 85 Fed. Reg. 20701;

**WHEREAS** as of September 19, 2020, North Carolina has had more than 192,248 confirmed COVID-19 cases, with more than 3,235 fatalities;

**WHEREAS** COVID-19 case counts continue to grow across the country, and the director of the Center for Disease Control and Prevention recently warned that the country should brace for "the worst fall from a public health perspective, we've ever had"[1];

**WHEREAS** the Executive Director of the North Carolina State Board of Elections observed that COVID-19 infections in North Carolina are likely to continue into the fall, through at least Election Day;[2]

---

[1]     *Coronavirus in Context:  CDC Director Discusses Next Steps in the War Against COVID*, Interview with John Whyte, WebMD (Aug. 13, 2020), https://www.webmd.com/coronavirus-in-context/video/robert-redfield.

3

**WHEREAS**, on June 22, 2020, the Centers for Disease Control and Prevention (CDC) issued interim guidance to prevent the spread of COVID-19 in election-polling locations.[3] The CDC guidance encourages elections officials to:

- "Encourage voters to stay at least 6 feet apart" from each other by posting signs and providing other visual cues and have plans to manage lines to ensure social distancing can be maintained;

- Increase the number of polling locations available for early voting and extend hours of operation at early voting sites;

- Maintain or increase the total number of polling places available to the public on Election Day to improve the ability to social distance;

- Minimize lines as much as possible, especially in small, indoor spaces;

- "Limit the number of voters in the facility by moving lines outdoors if weather permits or using a ticket system for access to the facility";

- Offer alternatives to in-person voting;

- Offer alternative voting options that minimize exposure between poll workers and voters;

---

[2]       N.C. State Bd. of Elections, *Emergency Order*, *Administering the November 3, 2020 General Election During the Global COVID-19 Pandemic and Public Health Emergency* (July 17, 2020), https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/Orders/Executive%20Director%20Orders/Emergency%20Order_2020-07-17.pdf.

[3]       *Considerations for Election Polling Locations and Voters: Interim guidance to prevent spread of coronavirus disease 2019 (COVID-19)*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/community/election-polling-locations.html.

**WHEREAS** large crowds at early voting and long lines on Election Day may create public health risks and impose severe burdens on the right to vote, making absentee voting by mail essential to ameliorate these possibilities;

**WHEREAS**, as of September 18, 2020, more than 889,273 absentee ballots had already been requested by North Carolina voters, more than 14 times the number of absentee ballots that had been requested by this time in 2016;

**WHEREAS** the absentee voting period for the 2020 elections began on September 4, 2020, N.C. Gen. Stat. § 163-227.10(a), and, as of September 21, 2020, nearly 1,400 absentee ballots had been flagged for incomplete witness information, according to data from the State Board of Elections[4];

**WHEREAS**, on August 4, 2020, the United States District Court for the Middle District of North Carolina enjoined the State Board from "the disallowance or rejection . . . of absentee ballots without due process as to those ballots with a material error that is subject to remediation." *Democracy N.C. v. N.C. State Bd. of Elections*, No. 1:20-cv-00457-WO-JLW (M.D.N.C. Aug. 4, 2020) (Osteen, J.), ECF 124 at 187. The injunction is to remain in force until the State Board implements a cure process that provides a voter with "notice and an opportunity to be heard before an absentee ballot with a material error subject to remediation is disallowed or rejected." *Id.*

**WHEREAS** courts in other states have enjoined those states from enforcing witness and notarization requirements, some of which are similar to North Carolina's Challenged Provisions,

---

[4] *North Carolina Early Voting Statistics*, U.S. Elections Project, https://electproject.github.io/Early-Vote-2020G/NC.html.

for elections occurring this year during the COVID-19 pandemic. *See, e.g.*, *Common Cause R.I. v. Gorbea*, No. 20-1753, 2020 WL 4579367, at *2 (1st Cir. Aug. 7, 2020) (denying motion to stay consent judgment suspending "notary or two-witness requirement" for mail ballots and finding that "[t]aking an unusual and in fact unnecessary chance with your life is a heavy burden to bear simply to vote."), *stay denied sub nom. Republican Nat'l Comm. v. Common Cause*, No. 20A28, 2020 WL 4680151 (U.S. Aug. 13, 2020); *Thomas v. Andino*, No. 3:20-cv-01552-JMC, 2020 WL 2617329, at *21 (D.S.C. May 25, 2020) (finding "strong likelihood that the burdens placed upon [plaintiffs] by" single-witness signature requirement "outweigh the imprecise, and (as admitted by [defendants]) ineffective, state interests of combating voter fraud and protecting voting integrity"); *League of Women Voters of Va. v. Va. State Bd. of Elections*, No. 6:20-CV-00024, 2020 WL 2158249, at *8 (W.D. Va. May 5, 2020) ("In our current era of social distancing—where not just Virginians, but all Americans, have been instructed to maintain a minimum of six feet from those outside their household—the burden [of the witness requirement] is substantial for a substantial and discrete class of Virginia's electorate. During this pandemic, the witness requirement has become 'both too restrictive and not restrictive enough to effectively prevent voter fraud.'"); Stipulation and Partial Consent Judgment, *LaRose v. Simon*, No. 62-CV-20-3149 (2d Jud. Dist. Minn. June 17, 2020) (approving consent judgment to not enforce Witness Requirement and Receipt deadline for primary election); Stipulation and Partial Consent Judgment, *LaRose v. Simon*, No. 62-CV-20-3149 (2d Jud. Dist. Minn. July 17, 2020) (approving similar consent judgment for November general election);

6

**WHEREAS** the delivery standards for the Postal Service, even in ordinary times, contemplate at a minimum at least a week for ballots to be processed through the postal system and delivered to election officials[5];

**WHEREAS** the General Counsel of the Postal Service sent a letter on July 30, 2020 to North Carolina's Secretary of State warning that, under North Carolina's "election laws, certain deadlines for requesting and casting mail-in ballots are incongruous with the Postal Service's delivery standards," and that "there is a significant risk" that "ballots may be requested in a manner that is consistent with your election rules and returned promptly, and yet not be returned in time to be counted."[6] In particular, the Postal Service recommended that election officials transmitting communication to voters "allow 1 week for delivery to voters," and that civilian voters "should generally mail their completed ballots at least one week before the state's due date. In states that allow mail-in ballots to be counted if they are *both* postmarked by Election Day *and* received by election officials by a specific date that is less than a week after Election Day, voters should mail their ballots at least one week before they must be received by election officials." *Id.*;

**WHEREAS** mail delivery conditions are already leading to greater delays: since mid-July there have been sharp decreases in the percentage of U.S. Postal Service mail, sent by any method, delivered on time;[7]

---

[5]  *State and Local Election Mail—User's Guide*, U.S. Postal Serv. (Jan. 2020), https://about.usps.com/publications/pub632.pdf.
[6] Letter to North Carolina Secretary of State from USPS General Counsel, App'x to Compl., ECF No. 1-1 at 53-55, *Commonwealth of Pennsylvania v. DeJoy*, No. 2:20-cv-04096-GAM (E.D. Pa. Aug. 21, 2020).
[7]  *Service Performance Measurement PMG Briefing*, U.S. Postal Serv. (Aug. 12, 2020), https://oversight.house.gov/sites/democrats.oversight.house.gov/files/documents/PMG%20Briefing_Service%20Performance%20Management_08_12_2020.pdf.

7

**WHEREAS** on August 21, 2020, the State of North Carolina, along with six other states filed a lawsuit challenging the Postal Service's procedural changes that the State alleges will likely delay election mail even further, creating a "significant risk" that North Carolina voters will be disenfranchised by the State's relevant deadlines governing absentee ballots;

**WHEREAS** increases in absentee voting, coupled with mail delays, threaten to slow down the process of mailing and returning absentee ballots, and appear likely to impact the 2020 elections;

**WHEREAS** pursuant to N.C. Gen. Stat. § 163-231(b)(2)(c), North Carolina already accepts military and overseas absentee ballots until the end of business on the business day before the canvass which occurs no earlier than the tenth day after the election, *see id.* § 163-182.5(b);

**WHEREAS** for the April 7, 2020 primary election in Wisconsin, the U.S. Supreme Court affirmed the implementation of a postmark rule, whereby ballots postmarked by Election Day could be counted as long as they were received within six days of Election Day, *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020), and other courts have also extended Election Day Receipt Deadlines in light of the current public health crisis. *See Mich. All. for Retired Americans v. Benson*, No. 20-000108-MM (Mich. Ct. Cl. Sept. 18, 2020) (extending ballot receipt deadline for November 2020 election); *Pa. Democratic Party v. Boockvar, K.*, 133 MM 2020, 2020 WL 5554644 (Pa. Sept. 17, 2020) (extending ballot receipt deadline for the November 2020 election); *New Ga. Project v. Raffensperger*, No. 1:20-cv-01986-ELR (N.D. Ga, Aug. 31, 2020) (granting motion for preliminary injunction in part and extending receipt deadline); *Driscoll v. Stapleton*, No. DV 20-408 (Mont. Dist. Ct. May 22, 2020), *stayed pending appeal* No. DA 20-0295 (preliminarily enjoining Montana's receipt

8

deadline and recognizing that enforcing the deadline was likely to disenfranchise thousands of voters); *LaRose v. Simon*, No. 62-CV-20-3149 at *25 (Minn. Dist. Ct. Aug. 3, 2020) (entering consent judgment extending Minnesota's receipt deadline);

     **WHEREAS** multiple courts have found that the enforcement of various other state election laws during the pandemic violate constitutional rights. *See, e.g., Esshaki v. Whitmer*, 813 F. App'x 170, 173 (6th Cir. 2020) (finding ballot-access provisions unconstitutional as applied during COVID-19 pandemic and upholding part of injunction enjoining state from enforcing the provisions under the present circumstances against plaintiffs and all other candidates); *Garbett v. Herbert*, No. 2:20-CV-245-RJS, 2020 WL 2064101, at *18 (D. Utah Apr. 29, 2020); *Libertarian Party of Ill. v. Pritzker*, No. 20-cv-2112, 2020 WL 1951687 (N.D. Ill. Apr. 23, 2020) (applying *Anderson-Burdick* in light of pandemic, and alleviating signature and witness requirements for minor party candidates), *aff'd sub nom. Libertarian Party of Ill. v. Cadigan*, No. 20-1961, 2020 WL 5104251 (7th Cir. Aug. 20, 2020); *People Not Politicians Oregon v. Clarno*, 20-cv-1053, 2020 WL 3960440 (D. Or. July 13, 2020); *Cooper v. Raffensperger*, -- F. Supp. 3d --, 20-cv-1312, 2020 WL 3892454 (N.D. Ga. July 9, 2020); *Reclaim Idaho v. Little*, 20-cv-268, 2020 WL 3490216 (D. Idaho June 26, 2020); *Paher v. Cegavske*, -- F. Supp. 3d --, 20-cv-243, 2020 WL 2089813 (D. Nev. Apr. 30, 2020); *Goldstein v. Sec'y of Commonwealth*, 484 Mass. 516, 142 N.E.3d 560 (2020);

     **WHEREAS** the State Board of Elections has broad, general supervisory authority over elections as set forth in N.C. Gen. Stat. § 163-22(a). As part of its supervisory authority, the State Board is empowered to "compel observance" by county boards of election laws and procedures as set forth in N.C. Gen. Stat. § 163-22(c).

**WHEREAS** the Executive Director of the State Board, as the chief State elections official, has the authority to issue Emergency Orders pursuant to N.C. Gen. Stat. § 163-27.1 and 08 NCAC 01.0106, which authorize her to exercise emergency powers to conduct an election where the normal schedule is disrupted. *See, e.g.*, Numbered Memo 2020-14; Numbered Memo 2020-19;

**WHEREAS** the Consent Parties agree that an expeditious resolution of this matter for the 2020 elections, in the manner contemplated by the terms of this Stipulation and Consent Judgment, will limit confusion and increase certainty surrounding the 2020 elections and is in the best interests of the health, safety, and constitutional rights of the citizens of North Carolina, and, therefore, in the public interest;

**WHEREAS** the Executive Defendants believe that continued litigation over the Challenged Provisions will result in the unnecessary expenditure of State resources, and is contrary to the best interests of the State of North Carolina;

**WHEREAS** the Consent Parties wish to avoid uncertainty about the requirements and obligations of voting in the 2020 elections for State Board officials and non-parties including county board officials, staff, and election workers, and the voting public;

**WHEREAS** the Consent Parties, in agreeing to these terms, acting by and through their counsel, have engaged in arms' length negotiations, and the Consent Parties are represented by counsel knowledgeable in this area of the law;

**WHEREAS**, other courts across the country have approved similar consent judgments between parties, *see Common Cause R.I. v. Gorbea*, No. 120CV00318MSMLDA, 2020 WL 4460914 (D.R.I. July 30, 2020) (approving consent judgment to not enforce Witness Requirement in primary and November general elections); Stipulation and Partial Consent

10

Judgment, *LaRose v. Simon*, No. 62-CV-20-3149 (2d Jud. Dist. Minn. June 17, 2020) (approving consent judgment to not enforce Witness Requirement and Receipt deadline for primary election); Stipulation and Partial Consent Judgment, *LaRose v. Simon*, No. 62-CV-20-3149 (2d Jud. Dist. Minn. July 17, 2020) (approving similar consent judgment for November general election); *League of Women Voters of Va.*, 2020 WL 2158249 (approving consent judgment to not enforce Witness Requirement in primary election); *see also Common Cause R.I. v. Gorbea*, 970 F.3d 11, 14 (1st Cir. 2020) (denying motion to stay the consent judgment and judgment pending appeal) *stay denied sub nom. Republican Nat'l Comm. v. Common Cause R.I.*, No. 20A28, 2020 WL 4680151 (U.S. Aug. 13, 2020);

**WHEREAS** the Executive Defendants do not waive any protections offered to them through federal or state law and do not make any representations regarding the merits of Plaintiffs' claims or potential defenses which could be raised in litigation;

**WHEREAS** the Consent Parties agree that the Consent Judgment promotes judicial economy, protects the limited resources of the Consent Parties, and resolves Plaintiffs' claims regarding the 2020 elections against the Executive Branch Defendants;

**WHEREAS** Plaintiffs agree to a waiver to any entitlement to damages and fees, including attorneys' fees, expenses, and costs against the Executive Defendants with respect to any and all claims raised by Plaintiffs in this action relating to the 2020 elections;

**WHEREAS** it is the finding of this Court, made on the pleadings and upon agreement of the Consent Parties, that: (i) the terms of this Consent Judgment constitute a fair and equitable settlement of the issues raised with respect to the 2020 elections, and (ii) the Consent Judgment is intended to and does resolve Plaintiffs' claims;

11

**NOW, THEREFORE**, upon consent of the Consent Parties, in consideration of the mutual promises and recitals contained in this Stipulation and Consent Judgment, including relinquishment of certain legal rights, the Consent Parties agree as follows:

## II.
## JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this action pursuant to Article 26 of Chapter 1 of the General Statutes, N.C. Gen. Stat. § 7A-245(a)(2), and N.C. Gen. Stat. § 1-493, and has jurisdiction over the Consent Parties herein. Venue for this action is proper in Wake County Superior Court because the Executive Defendants reside in Wake County. *Id.* § 1-82. The Court shall retain jurisdiction of this Stipulation and Consent Judgment for the duration of the term of this Stipulation and Consent Judgment for purposes of entering all orders and judgments that may be necessary to implement and enforce compliance with the terms provided herein.

## III.
## PARTIES

This Stipulation and Consent Judgment applies to and is binding upon the following parties:

A.      Damon Circosta, in his capacity as Chair of the North Carolina State Board of Elections;

B.      The North Carolina State Board of Elections; and

C.      All Plaintiffs.

## IV.
## SCOPE OF CONSENT JUDGMENT

12

A.     This Stipulation and Consent Judgment constitutes a settlement and resolution of Plaintiffs' claims against Executive Defendants pending in this Lawsuit. Plaintiffs recognize that by signing this Stipulation and Consent Judgment, they are releasing any claims under the North Carolina Constitution that they might have against Executive Defendants with respect to the Challenged Provisions in the 2020 elections. Plaintiffs' release of claims will become final upon the effective date of this Stipulation and Consent Judgment.

B.     The Consent Parties to this Stipulation and Consent Judgment acknowledge that this does not resolve or purport to resolve any claims pertaining to the constitutionality or enforcement of the Challenged Provisions for elections held after the 2020 elections.

C.     The Consent Parties to this Stipulation and Consent Judgment further acknowledge that by signing this Stipulation and Consent Judgment, the Consent Parties do not release or waive the following: (i) any rights, claims, or defenses that are based on any events that occur after they sign this Stipulation and Consent Judgment, (ii) any claims or defenses that are unrelated to the allegations filed by Plaintiffs in this Lawsuit, and (iii) any right to institute legal action for the purpose of enforcing this Stipulation and Consent Judgment or defenses thereto.

D.     By entering this Stipulation and Consent Judgment, Plaintiffs are fully settling a disputed matter between themselves and Executive Defendants. The Consent Parties are entering this Stipulation and Consent Judgment for the purpose of resolving disputed claims, avoiding the burdens and costs associated with the costs of litigating this matter through final judgment, and ensuring both safety and certainty in advance of the 2020 elections. Nothing in this Stipulation and Consent Judgment constitutes an admission by any party of liability or wrongdoing. The Consent Parties acknowledge that a court may seek to consider this Stipulation and Consent

13

Judgment, including the violations alleged in Plaintiffs' Amended Complaint, in a future proceeding distinct from this Lawsuit.

## V.
## CONSENT JUDGMENT OBJECTIVES

In addition to settling the claims of the Consent Parties, the objective of this Stipulation and Consent Judgment is to avoid any continued uncertainty and distraction from the uniform administration of the 2020 elections, protect the limited resources of the Consent Parties, ensure that North Carolina voters can safely and constitutionally exercise the franchise in the 2020 elections, and ensure that election officials have sufficient time to implement any changes for the 2020 elections and educate voters about these changes.

## VI.
## INJUNCTIVE RELIEF

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, AND JUDGED FOR THE REASONS STATED ABOVE THAT:**

A.      For the 2020 elections Executive Defendants shall extend the Receipt Deadline for mailed absentee ballots, as set forth in N.C. Gen. Stat. § 163-231(b)(2), to the deadline set forth in paragraph VI.B below and in Numbered Memo 2020-22 (attached as Exhibit A).

B.      Pursuant to Numbered Memo 2020-22, an absentee ballot shall be counted as timely in the 2020 elections if it is either (1) received by the county board by 5:00 p.m. on Election Day; or (2) the ballot is postmarked on or before Election Day and received by nine days after the election, which is Thursday, November 12, 2020 at 5:00 p.m. For purposes of this Stipulation and Consent Judgment and as the Numbered Memo requires, a ballot shall be considered postmarked on or before Election Day if it has a postmark affixed to it or if there is information in the Postal Service tracking system (BallotTrax), or another tracking service

14

offered by the Postal Service or the commercial carrier, indicating that the ballot was in the custody of the Postal Service or a commercial carrier on or before Election Day.

C. For the 2020 elections, Executive Defendants shall institute a process to cure deficiencies that may be cured with a certification from the voter in accordance with the procedures set forth in Numbered Memo 2020-19 (attached as Exhibit B). Curable deficiencies include: no voter signature, misplaced voter signature, no witness or assistant name, no witness or assistant address, no witness or assistant signature, and misplaced witness or assistant signature. If a county board office receives a container-return envelope with such a curable deficiency, it shall contact the voter in writing by mail and, if available, email, within one business day of identifying the deficiency, informing the voter that there is an issue with their absentee ballot and enclosing a cure certification. The written notice shall be sent to the address to which the voter requested their ballot be sent. The cure certification must be received by the county board of elections by no later than 5 p.m. on Thursday, November 12, 2020, the day before county canvass. The cure certification may be submitted to the county board office by fax, email, in person, or by mail or commercial carrier.

D. Pursuant to Numbered Memo 2020-23, (attached as Exhibit C) Executive Defendants shall institute a process for establishing a separate absentee ballot drop-off station at each one-stop early voting location and at county board offices. Such drop-off stations may be located outdoors subject to the conditions set forth in Numbered Memo 2020-23. In addition, when a person returns a ballot in person, the county board intake staffer shall ask the person for their name and whether they are the voter or the voter's near relative or legal guardian. The staffer will indicate this information on a log along with the CIV number of the ballot and the date that it was received. If the person returning the ballot in person indicates that they are not

15

the voter or the voter's near relative or legal guardian, the county board intake staffer will also require the person to provide their address and phone number.

E.      Executive Defendants shall take additional reasonable steps to inform the public of the contents of Numbered Memos 2020-19, -22, -23 and shall encourage all county boards of elections to do the same.

F.      Plaintiffs will withdraw their Motion for Preliminary Injunction, filed on August 18, 2020, and will not file any further motions for relief for the 2020 elections based on the claims raised in their Amended Complaint of August 18, 2020.

G.      In accordance with the terms of this Stipulation and Consent Judgment, the Consent Parties shall each bear their own fees, expenses, and costs incurred as of the date of this Order with respect to this lawsuit.

H.      All remaining claims filed by Plaintiffs against the Executive Defendants related to the conduct of the 2020 elections in this action are hereby dismissed with prejudice. The Court will retain jurisdiction of these claims only as to enforcement of the Stipulation and Consent Judgment.

## VII.
## ENFORCEMENT AND RESERVATION OF REMEDIES

The parties to this Stipulation and Consent Judgment may request relief from this Court if issues arise concerning the interpretation of this Stipulation and Consent Judgment that cannot be resolved through the process described below. This Court specifically retains continuing jurisdiction over the subject matter hereof and the Consent Parties hereto for the purposes of interpreting, enforcing, or modifying the terms of this Stipulation and Consent Judgment, or for granting any other relief not inconsistent with the terms of this Consent Judgment, until this Consent Judgment is terminated. The Consent Parties may apply to this Court for any orders or

other relief necessary to construe or effectuate this Stipulation and Consent Judgment or seek informal conferences for direction as may be appropriate. The Consent Parties shall attempt to meet and confer regarding any dispute prior to seeking relief from the Court.

If any Party believes that another has not complied with the requirements of this Stipulation and Consent Judgment, it shall notify the other Party of its noncompliance by emailing the Party's counsel. Notice shall be given at least one business day prior to initiating any action or filing any motion with the Court.

The Consent Parties specifically reserve their right to seek recovery of their litigation costs and expenses arising from any violation of this Stipulation and Consent Judgment that requires any Party to file a motion with this Court for enforcement of this Stipulation and Consent Judgment.

## VIII.
## GENERAL TERMS

**A.      Voluntary Agreement**. The Consent Parties acknowledge that no person has exerted undue pressure on them to enter into this Stipulation and Consent Judgment. Every Party is voluntarily choosing to enter into this Stipulation and Consent Judgment because of the benefits that are provided under the agreement. The Consent Parties acknowledge that they have read and understand the terms of this Stipulation and Consent Judgment; they have been represented by legal counsel or had the opportunity to obtain legal counsel; and they are voluntarily entering into this Stipulation and Consent Judgment to resolve the dispute among them.

**B.      Severability**. The provisions of this Stipulation and Consent Judgment shall be severable, and, should any provisions be declared by a court of competent jurisdiction to be

17

unenforceable, the remaining provisions of this Stipulation and Consent Judgment shall remain in full force and effect.

**C.** **Agreement**. This Stipulation and Consent Judgment is binding. The Consent Parties acknowledge that they have been advised that (i) no other Party has a duty to protect their interest or provide them with information about their legal rights, (ii) signing this Stipulation and Consent Judgment may adversely affect their legal rights, and (iii) they should consult an attorney before signing this Stipulation and Consent Judgment if they are uncertain of their rights.

**D.** **Entire Agreement**. This Stipulation and Consent Judgment constitutes the entire agreement between the Consent Parties relating to the constitutionality and enforcement of the Challenged Provisions as they pertain to the 2020 elections. No Party has relied upon any statements, promises, or representations that are not stated in this document. No changes to this Stipulation and Consent Judgment are valid unless they are in writing, identified as an amendment to this Stipulation and Consent Judgment, and signed by all Parties. There are no inducements or representations leading to the execution of this Stipulation and Consent Judgment except as herein explicitly contained.

**E.** **Warranty**. The persons signing this Stipulation and Consent Judgment warrant that they have full authority to enter this Stipulation and Consent Judgment on behalf of the Party each represents, and that this Stipulation and Consent Judgment is valid and enforceable as to that Party.

**F.** **Counterparts**. This Stipulation and Consent Judgment may be executed in multiple counterparts, which shall be construed together as if one instrument. Any Party shall be entitled to rely on an electronic or facsimile copy of a signature as if it were an original.

18

**G.** **Effective Date**. This Stipulation and Consent Judgment is effective upon the date it is entered by the Court.

## IX.
## TERMINATION

This Stipulation and Consent Judgment shall remain in effect through the certification of ballots for the 2020 elections. The Court shall retain jurisdiction to enforce the terms of the Consent Judgment for the duration of this Consent Judgment. This Court's jurisdiction over this Stipulation and Consent Judgment shall automatically terminate after the certification of all ballots for the 2020 elections.

**THE PARTIES ENTER INTO AND APPROVE THIS STIPULATION AND CONSENT JUDGMENT AND SUBMIT IT TO THE COURT SO THAT IT MAY BE APPROVED AND ENTERED. THE PARTIES HAVE CAUSED THIS STIPULATION AND CONSENT JUDGMENT TO BE SIGNED ON THE DATES OPPOSITE THEIR SIGNATURES.**

**NORTH CAROLINA STATE BOARD OF ELECTIONS; and DAMON CIRCOSTA CHAIR, NORTH CAROLINA STATE BOARD OF ELECTIONS**

Dated: September 22, 2020

By: /s/ Alexander McC. Peters
Alexander McC. Peters, N.C. Bar No. 13654
Terrance Steed
North Carolina Dept. of Justice
Post Office Box 629
Raleigh, N.C. 27602
apeters@ncdoj.gov
tsteed@ncdoj.gov

**NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS; BARKER FOWLER; BECKY JOHNSON; JADE JUREK; ROSALYN KOCIEMBA; TOM KOCIEMBA; SANDRA MALONE; and CAREN RABINOWITZ**

Dated: September 22, 2020

By: *Burton Craige*
Burton Craige, NC Bar No. 9180
Narendra K. Ghosh, NC Bar No. 37649
Paul E. Smith, NC Bar No. 45014
PATTERSON HARKAVY LLP
100 Europa Drive, Suite 420
Chapel Hill, NC 27517
Telephone: 919.942.5200
BCraige@pathlaw.com
NGhosh@pathlaw.com
PSmith@pathlaw.com

Marc E. Elias
Uzoma N. Nkwonta
Lalitha D. Madduri
Jyoti Jasrasaria
Ariel B. Glickman
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, DC 20005
Telephone: 202.654.6200
Facsimile: 202.654.6211
MElias@perkinscoie.com
UNkwonta@perkinscoie.com
LMadduri@perkinscoie.com
JJasrasaria@perkinscoie.com
AGlickman@perkinscoie.com

20

Molly Mitchell
PERKINS COIE LLP

**IT IS SO ORDERED. JUDGMENT SHALL BE ENTERED IN ACCORDANCE WITH THE FOREGOING CONSENT JUDGMENT.**


Dated: _____         _____

Superior Court Judge

# EXHIBIT A



Mailing Address:
P.O. Box 27255
Raleigh, NC 27611

(919) 814-0700 or
(866) 522-4723

Fax: (919) 715-0135

# Numbered Memo 2020-22

**TO:**      County Boards of Elections

**FROM:**    Karen Brinson Bell, Executive Director

**RE:**      Return Deadline for Mailed Civilian Absentee Ballots in 2020

**DATE:**    September 22, 2020

The purpose of this numbered memo is to extend the return deadline for postmarked civilian absentee ballots that are returned by mail and to define the term "postmark." This numbered memo only applies to remaining elections in 2020.

## Extension of Deadline

Due to current delays with mail sent with the U.S. Postal Service (USPS)—delays which may be exacerbated by the large number of absentee ballots being requested this election—the deadline for receipt of postmarked civilian absentee ballots is hereby extended to nine days after the election only for remaining elections in 2020.

**An absentee ballot shall be counted as timely if it is either (1) received by the county board by 5:00 p.m. on Election Day; or (2) the ballot is postmarked on or before Election Day and received by nine days after the election, which is Thursday, November 12, 2020 at 5:00 p.m.[1]**

## Postmark Requirement

The postmark requirement for ballots received after Election Day is in place to prohibit a voter from learning the outcome of an election and then casting their ballot. However, the USPS does not always affix a postmark to a ballot return envelope. Because the agency now offers BallotTrax, a service that allows voters and county boards to track the status of a voter's absentee ballot, it is possible for county boards to determine when a ballot was mailed even if it does not have a postmark. Further, commercial carriers including DHL, FedEx, and UPS offer tracking services that allow voters and the county boards of elections to determine when a ballot was deposited with the commercial carrier for delivery.

---

[1] *Compare* G.S. § 163-231(b)(2)(b) (that a postmarked absentee ballot be received by three days after the election).

**For remaining elections in 2020, a ballot shall be considered postmarked by Election Day if it has a postmark affixed to it or if there is information in BallotTrax, or another tracking service offered by the USPS or a commercial carrier, indicating that the ballot was in the custody of USPS or the commercial carrier on or before Election Day.** If a container-return envelope arrives after Election Day and does not have a postmark, county board staff shall conduct research to determine whether there is information in BallotTrax that indicates the date it was in the custody of the USPS. If the container-return envelope arrives in an outer mailing envelope with a tracking number after Election Day, county board staff shall conduct research with the USPS or commercial carrier to determine the date it was in the custody of USPS or the commercial carrier.

# EXHIBIT B

*Mailing Address:*
P.O. Box 27255
Raleigh, NC 27611

(919) 814-0700 or
(866) 522-4723

*Fax:* (919) 715-0135

# NORTH CAROLINA
## STATE BOARD OF ELECTIONS

## Numbered Memo 2020-19

**TO:**    County Boards of Elections

**FROM:**    Karen Brinson Bell, Executive Director

**RE:**    Absentee Container-Return Envelope Deficiencies

**DATE:**    August 21, 2020 (revised on September 22, 2020)

County boards of elections have already experienced an unprecedented number of voters seeking to vote absentee-by-mail in the 2020 General Election, making statewide uniformity and consistency in reviewing and processing these ballots more essential than ever. County boards of elections must ensure that the votes of all eligible voters are counted using the same standards, regardless of the county in which the voter resides.

This numbered memo directs the procedure county boards must use to address deficiencies in absentee ballots. The purpose of this numbered memo is to ensure that a voter is provided every opportunity to correct certain deficiencies, while at the same time recognizing that processes must be manageable for county boards of elections to timely complete required tasks.[1]

## 1. No Signature Verification

The voter's signature on the envelope shall not be compared with the voter's signature on file because this is not required by North Carolina law. County boards shall accept the voter's signature on the container-return envelope if it appears to be made by the voter, meaning the signature on the envelope appears to be the name of the voter and not some other person. Absent clear evidence to the contrary, the county board shall presume that the voter's signature is that of the voter, even if the signature is illegible. A voter may sign their signature or make their mark.

---

[1] This numbered memo is issued pursuant to the State Board of Elections' general supervisory authority over elections as set forth in G.S. § 163-22(a) and the authority of the Executive Director in G.S. § 163-26. As part of its supervisory authority, the State Board is empowered to "compel observance" by county boards of election laws and procedures. *Id.*, § 163-22(c).

The law does not require that the voter's signature on the envelope be compared with the voter's signature in their registration record. See also Numbered Memo 2020-15, which explains that signature comparison is not permissible for absentee request forms.

## 2. Types of Deficiencies

Trained county board staff shall review each executed container-return envelope the office receives to determine if there are any deficiencies. County board staff shall, to the extent possible, regularly review container-return envelopes on each business day, to ensure that voters have every opportunity to correct deficiencies. Review of the container-return envelope for deficiencies occurs *after* intake. The initial review is conducted by staff to expedite processing of the envelopes.

Deficiencies fall into two main categories: those that can be cured with a certification and those that cannot be cured. If a deficiency cannot be cured, the ballot must be spoiled and a new ballot must be issued, as long as the ballot is issued before Election Day. See Section 3 of this memo, Voter Notification.

### 2.1. Deficiencies Curable with a Certification (Civilian and UOCAVA)

The following deficiencies can be cured by sending the voter a certification:

- Voter did not sign the Voter Certification
- Voter signed in the wrong place
- Witness or assistant did not print name[2]
- Witness or assistant did not print address[3]
- Witness or assistant did not sign
- Witness or assistant signed on the wrong line

---

[2] If the name is readable and on the correct line, even if it is written in cursive script, for example, it does not invalidate the container-return envelope.

[3] Failure to list a witness's ZIP code does not require a cure. G.S. § 163-231(a)(5). A witness or assistant's address does not have to be a residential address; it may be a post office box or other mailing address. Additionally, if the address is missing a city or state, but the county board of elections can determine the correct address, the failure to list that information also does not invalidate the container-return envelope. For example, if a witness lists "Raleigh 27603" you can determine the state is NC, or if a witness lists "333 North Main Street, 27701" you can determine that the city/state is Durham, NC. If both the city and ZIP code are missing, staff will need to determine whether the correct address can be identified. If the correct address cannot be identified, the envelope shall be considered deficient and the county board shall send the voter the cure certification in accordance with Section 3.

2

This cure certification process applies to both civilian and UOCAVA voters.

### 2.2. Deficiencies that Require the Ballot to Be Spoiled (Civilian)

The following deficiencies cannot be cured by certification:

- Upon arrival at the county board office, the envelope is unsealed
- The envelope indicates the voter is requesting a replacement ballot

If a county board receives a container-return envelope with one of these deficiencies, county board staff shall spoil the ballot and reissue a ballot along with a notice explaining the county board office's action, in accordance with Section 3.

### 2.3. Deficiencies that require board action

Some deficiencies cannot be resolved by staff and require action by the county board. These include situations where the deficiency is first noticed at a board meeting or if it becomes apparent during a board meeting that no ballot or more than one ballot is in the container-return envelope. If the county board disapproves a container-return envelope by majority vote in a board meeting due to a deficiency, it shall proceed according to the notification process outlined in Section 3.

## 3. Voter Notification

### 3.1. Issuance of a Cure Certification or New Ballot

If there are any deficiencies with the absentee envelope, the county board of elections shall contact the voter in writing within one business day of identifying the deficiency to inform the voter there is an issue with their absentee ballot and enclosing a cure certification or new ballot, as directed by Section 2. The written notice shall also include information on how to vote in-person during the early voting period and on Election Day.

The written notice shall be sent to the address to which the voter requested their ballot be sent.

If the deficiency can be cured and the voter has an email address on file, the county board shall also send the cure certification to the voter by email. If the county board sends a cure certification by email and by mail, the county board should encourage the voter to only return *one* of the certifications. If the voter did not provide an email address but did provide a phone number, the county board shall contact the voter by phone to inform the voter that the county board has mailed the voter a cure certification.

If the deficiency cannot be cured, and the voter has an email address on file, the county board shall notify the voter by email that a new ballot has been issued to the voter. If the voter did not provide an email address but did provide a phone number, the county board shall contact the voter by phone to inform the voter that the county board has issued a new ballot by mail.

3

If, prior to September 22, 2020, a county board reissued a ballot to a voter, and the updated memo now allows the deficiency to be cured by certification, the county board shall contact the voter in writing and by phone or email, if available, to explain that the procedure has changed and that the voter now has the option to submit a cure certification instead of a new ballot. A county board is not required to send a cure certification to a voter who already returned their second ballot if the second ballot is not deficient.

A county board shall not reissue a ballot on or after Election Day. If there is a curable deficiency, the county board shall contact voters up until the day before county canvass.

### 3.2. Receipt of a Cure Certification

The cure certification must be received by the county board of elections by no later than 5 p.m. on Thursday, November 12, 2020, the day before county canvass. The cure certification may be submitted to the county board office by fax, email, in person, or by mail or commercial carrier. If a voter appears in person at the county board office, they may also be given, and can complete, a new cure certification.

The cure certification may only be returned by the voter, the voter's near relative or legal guardian, or a multipartisan assistance team (MAT). A cure certification returned by any other person is invalid. It is not permissible for a cure certification to be submitted through a portal or form created or maintained by a third party. A cure certification may not be submitted simultaneously with the ballot. Any person who is permitted to assist a voter with their ballot may assist a voter in filling out the cure certification.

### 3.3 County Board Review of a Cure Certification

At each absentee board meeting, the county board of elections may consider deficient ballot return envelopes for which the cure certification has been returned. The county board shall consider together the executed absentee ballot envelope and the cure certification. If the cure certification contains the voter's name and signature, the county board of elections shall approve the absentee ballot. A wet ink signature is not required, but the signature used must be unique to the individual. A typed signature is not acceptable, even if it is cursive or italics such as is commonly seen with a program such as DocuSign.

## 4. Late Absentee Ballots

Voters whose ballots are not counted due to being late shall be mailed a notice stating the reason for the deficiency. A late civilian ballot is one that received after the absentee-ballot receipt deadline, defined in Numbered Memo 2020-22 as (1) 5 p.m. on Election Day or (2) if postmarked on or before Election Day, 5 p.m. on Thursday, November 12, 2020. Late absentee ballots are not curable.

If a ballot is received after county canvass the county board is not required to notify the voter.

4

COUNTY LETTERHEAD

DATE

NAME
STREET ADDRESS
CITY, STATE, ZIP CODE

RE:     Notice of a Problem with Your Absentee Ballot

The [County] Board of Elections received your returned absentee ballot.  We were unable to approve the counting of your absentee ballot for the following reason or reasons:

☐     The absentee return envelope arrived at the county board of elections office unsealed.

☐     The absentee return envelope did not contain a ballot or contained the ballots of more than one voter.

☐     Other:

_____

We have reissued a new absentee ballot.  Please pay careful attention to ALL of the instructions on the back of the container-return envelope and complete and return your ballot so that your vote may be counted.

If time permits and you decide not to vote this reissued absentee ballot, you may vote in person at an early voting site in the county during the one-stop early voting period (October 15-31), or at the polling place of your proper precinct on Election Day, **November 3**. The hours for voting on Election Day are from **6:30 a.m.** to **7:30 p.m.** To find the hours and locations for in-person voting in your county, visit http://www.ncsbe.gov .

Sincerely,

[NAME]
_____ County Board of Elections

DATE

VOTER'S NAME
STREET ADDRESS
CITY, STATE, ZIP CODE
CIV Number

## Absentee Cure Certification

### *There is a problem with your absentee ballot – please sign and return this form.*

**Instructions**

You are receiving this affidavit because your absentee ballot envelope is missing information.   For your absentee ballot to be counted, complete and return this affidavit as soon as possible.  **The affidavit must be received by your county board of elections by no later than 5 p.m. on Thursday, November 12, 2020.**  You, your near relative or legal guardian, or a multipartisan assistance team (MAT), can return the affidavit by:

- Email (add county email address if not in letterhead) (you can email a picture of the form)
- Fax (add county fax number if not in letterhead)
- Delivering it in person to the county board of elections office
- Mail or commercial carrier (add county mailing address)

**If this affidavit is not returned to the county board of elections by the deadline, your absentee ballot will not count. If you decide not to return this affidavit, you may still vote in person during the early voting period (October 15-October 31) or on Election Day, November 3, 2020. To find the hours and locations for in-person voting in your county, visit  http://www.ncsbe.gov .**

**READ AND COMPLETE THE FOLLOWING:**

I am submitting this affidavit to correct a problem with missing information on the ballot envelope. I am an eligible voter in this election and registered to vote in [name] County, North Carolina.  I solemnly swear or affirm that I voted and returned my absentee ballot for the November 3, 2020 general election and that I have not voted and will not vote more than one ballot in this election.  I understand that fraudulently or falsely completing this affidavit is a Class I felony under Chapter 163 of the North Carolina General Statutes.

*(Print name and sign below)*

_____

Voter's Printed Name **(Required)**

_____

Voter's Signature* **(Required)**

* A wet ink signature is not required, but the signature used must be unique to the individual. A typed signature is not acceptable, even if it is in cursive or italics such as is commonly seen with a program such as DocuSign.

# EXHIBIT C

*Mailing Address:*
P.O. Box 27255
Raleigh, NC 27611

(919) 814-0700 or
(866) 522-4723

*Fax:* (919) 715-0135

# NORTH CAROLINA
## STATE BOARD OF ELECTIONS

# Numbered Memo 2020-23

**TO:**       County Boards of Elections

**FROM:**    Karen Brinson Bell, Executive Director

**RE:**       In-Person Return of Absentee Ballots

**DATE:**    September 22, 2020

Absentee by mail voters may choose to return their ballot by mail or in person. Voters who return their ballot in person may return it to the county board of elections office by 5 p.m. on Election Day or to any one-stop early voting site in the county during the one-stop early voting period. This numbered memo provides guidance and recommendations for the safe, secure, and controlled in-person return of absentee ballots.

## General Information

### Who May Return a Ballot

A significant portion of voters are choosing to return their absentee ballots in person for this election. Only the voter, or the voter's near relative or legal guardian, is permitted to possess an absentee ballot.[1] A multipartisan assistance team (MAT) or a third party may not take possession of an absentee ballot. **Because of this provision in the law, an absentee ballot may not be left in an unmanned drop box.**

The county board shall ensure that, if they have a drop box, slot, or similar container at their office, the container has a sign indicating that absentee ballots may not be deposited in it.

### Intake of Container-Return Envelope

As outlined in Numbered Memo 2020-19, trained county board staff review each container-return envelope to determine if there are any deficiencies. Review of the container-return envelope

---

[1] It is a class I felony for any person other than the voter's near relative or legal guardian to take possession of an absentee ballot of another voter for delivery or for return to a county board of elections. G.S. § 163-223.6(a)(5).

does not occur at intake. Therefore, the staff member conducting intake should not conduct a re-view of the container envelope and should accept the ballot. If intake staff receive questions about whether the ballot is acceptable, they shall inform the voter that it will be reviewed at a later time and the voter will be contacted if there are any issues. Intake staff shall accept receipt of all ballots provided to them, even if information is missing or someone other than the voter or their near relative or legal guardian returns the ballot.

It is not recommended that county board staff serve as a witness for a voter while on duty. If a county board determines that it will allow staff to serve as a witness, the staff member who is a witness shall be one who is not involved in the review of absentee ballot envelopes.

## Log Requirement

An administrative rule requires county boards to keep a written log when any person returns an absentee ballot in person.[2] **However, to limit the spread of COVID-19, the written log require-ment has been adjusted for remaining elections in 2020.**

When a person returns the ballot in person, the intake staff will ask the person for their name and whether they are the voter or the voter's near relative or legal guardian. The staffer will indicate this information on a log along with the CIV number of the ballot and the date that it was received. If the person indicates they are not the voter or the voter's near relative or legal guardian, the staffer will also require the person to provide their address and phone number.

## Board Consideration of Delivery and Log Requirements

Failure to comply with the logging requirement, or delivery of an absentee ballot by a person other than the voter, the voter's near relative, or the voter's legal guardian, is not sufficient evidence in and of itself to establish that the voter did not lawfully vote their ballot.[3] A county board shall not disapprove an absentee ballot solely because it was delivered by someone who was not authorized

---

[2] 08 NCAC 18 .0102 requires that, upon delivery, the person delivering the ballot shall provide the following information in writing: (1) Name of voter; (2) Name of person delivering ballot; (3) Relationship to voter; (4) Phone number (if available) and current address of person deliver-ing ballot; (5) Date and time of delivery of ballot; and (6) Signature or mark of person delivering ballot certifying that the information provided is true and correct and that the person is the voter or the voter's near relative.

[3] *Id.* Compare G.S. § 163-230.2(3), as amended by Section 1.3.(a) of Session Law 2019-239, which states that an absentee request form returned to the county board by someone other than an unauthorized person is invalid.

2

to possess the ballot. The county board may, however, consider the delivery of a ballot in accordance with the rule, 08 NCAC 18 .0102, in conjunction with other evidence in determining whether the ballot is valid and should be counted.

## Return at a County Board Office

A voter may return their absentee ballot to the county board of elections office any time the office is open. A county board must ensure its office is staffed during regular business hours to allow for return of absentee ballots. Even if your office is closed to the public, you must provide staff who are in the office during regular business hours to accept absentee ballots until the end of Election Day. You are not required to accept absentee ballots outside of regular business hours. Similar to procedures at the close of polls on Election Day, if an individual is in line at the time your office closes or at the absentee ballot return deadline (5 p.m. on Election Day), a county board shall accept receipt of the ballot.

If your site has a mail drop or drop box used for other purposes, you must affix a sign stating that voters may not place their ballots in the drop box. However, a county board may not disapprove a ballot solely because it is placed in a drop box.[4]

In determining the setup of your office for in-person return of absentee ballots, you should consider and plan for the following:

- Ensure adequate parking, especially if your county board office will be used as a one-stop site
- Arrange sufficient space for long lines and markings for social distancing
- Provide signage directing voters to the location to return their absentee ballot
- Ensure the security of absentee ballots. Use a locked or securable container for returned absentee ballots that cannot be readily removed by an unauthorized person.
- If your set-up allows the return of ballots outside, plan for the possibility of severe weather. You may need a tent or other covering. Have a plan for how crowd control will occur without the physical barriers of an office and the security of your staff and the balloting materials. For safety reasons, it is not recommended you keep an outside return location open after dark or during inclement weather.

---

[4] *Id.*

3

# Return at an Early Voting Site

## Location to Return Absentee Ballots

Each early voting site shall have at least one designated, staffed station for the return of absentee ballots. Return of absentee ballots shall occur at that station. The station may be set up exclusively for absentee ballot returns or may provide other services, such as a help desk, provided the absentee ballots can be accounted for and secured separately from other ballots or processes. Similar to accepting absentee ballots at the county board of elections office, you should consider and plan for the following with the setup of an early voting location for in-person return of absentee ballots:

- Have a plan for how crowd control will occur and how voters will be directed to the appropriate location for in-person return of absentee ballots
- Provide signage directing voters and markings for social distancing
- Ensure adequate parking and sufficient space for long lines
- If your set-up allows the return of ballots outside, plan for the possibility of severe weather. You may need a tent or other covering. Have a plan for how crowd control will occur without the physical barriers of an office and the security of your staff and the balloting materials. For safety reasons, ensure that there is adequate lighting as voting hours will continue past dark.

Because absentee ballots must be returned to a designated station, absentee ballots should not be returned in the curbside area.

## Procedures

Absentee ballots that are hand-delivered must be placed in a secured container upon receipt, similar to how provisional ballots are securely stored at voting sites. Absentee by mail ballots delivered to an early voting site must be stored separately from all other ballots in a container designated only for absentee by mail ballots. County boards must also conduct regular reconciliation practices between the log and the absentee ballots. County boards are not required by the State to log returned ballots into SOSA; however, a county board may require their one-stop staff to complete SOSA logging.

If a voter brings in an absentee ballot and does not want to vote it, the ballot should be placed in the spoiled-ballot bag. It is recommended that voters who call the county board office and do not want to vote their absentee ballot be encouraged to discard the ballot at home.

# Return at an Election Site

An absentee ballot may not be returned at an Election Day polling place. If a voter appears in person with their ballot at a polling place on Election Day, they shall be instructed that they may

(1) take their ballot to the county board office or mail it so it is postmarked that day and received by the deadline; or (2) have the absentee ballot spoiled and vote in-person at their polling place.

If someone other than the voter appears with the ballot, they shall be instructed to take it to the county board office or mail the ballot so it is postmarked the same day. If the person returning the ballot chooses to mail the ballot, they should be encouraged to take it to a post office to ensure the envelope is postmarked. Depositing the ballot in a USPS drop box on Election Day may result in ballot not being postmarked by Election Day and therefore not being counted.