# EXHIBIT 4

| **TO:** | Governor Roy Cooper; Speaker Tim Moore; President Pro Tempore Phil Berger; Joint Legislative Elections Oversight Committee; Joint Legislative Oversight Committee on General Government; and House Select Committee on COVID-19, Continuity of State Operations Working Group |
|---|---|
| **FROM:** | Karen Brinson Bell, Executive Director |
| **RE:** | Recommendations to Address Election-Related Issues Affected by COVID-19 |
| **DATE:** | March 26, 2020 |

The spread of the novel coronavirus (COVID-19) impacts the conduct of elections and daily operations for the State Board of Elections (State Board) and county boards of elections. In response, our agency has taken a number of actions in recent days and weeks to address election-related impacts of the pandemic and inform the public about our efforts. These include:

- An emergency [Executive Order](#) issued on March 20, 2020, that, among other things, rescheduled the Republican second primary in Congressional District 11 from May 12, 2020, to June 23, 2020.

- An amended Administrative Rule 08 NCAC 01 .0106, by both [emergency](#) and proposed [temporary](#) rulemaking, to clarify the Executive Director's statutory authority to exercise emergency powers to conduct an election in a district where the normal schedule for the election is disrupted by a natural disaster, extremely inclement weather, or armed conflict. The amendment clarifies that a catastrophe arising from natural causes includes a disease epidemic or other public health incident that makes it impossible or extremely hazardous for elections officials or voters to reach or otherwise access the voting place or that creates a significant risk of physical harm to persons in the voting place, or that would otherwise convince a reasonable person to avoid traveling to or being in a voting place.

- [Numbered Memo 2020-11](#), released on March 15, 2020, provides guidance on immediate actions that may be taken by authority of the Executive Director and other steps that may be taken by county boards of elections.

- Establishment of a working group of State and county election officials to consider immediate steps that should be taken for the conduct of the federal second primary and also more long-term steps including legislative requests to administer elections in times of disease epidemics, necessary measures if mail balloting were expanded, and efforts that must be taken to ensure the health and well-being of voters and workers during in-person voting.

- A [statement](#) released by the NCSBE on March 12, 2020.

While the State Board will continue to administer elections in the wake of COVID-19 within our current legal authority, the State Board respectfully recommends the General Assembly consider making the following statutory changes to address the impacts of the coronavirus pandemic on our elections. We believe that, in order to ensure continuity and avoid voter confusion, the changes should be made permanent, except where indicated otherwise.

- **Expand options for absentee requests.** We recommend allowing a voter to submit an absentee ballot request form by fax and email. Current law restricts the return of the absentee request form to the voter and the voter's near relative or legal guardian, and restricts the methods by which the requests can be returned to in-person or by mail or designated delivery service. We also recommend a limited exception to G.S. § 163-230.2(e)(2) to allow county boards of elections to pre-fill a voter's information on an absentee request form. The voter or near relative would still be required to sign the form, but this change would allow voters who are home due to COVID-19 to request an absentee request form by phone and have a pre-filled form sent to them rather than having to travel to the county board office to receive assistance.

- **Establish online portal for absentee requests.** The State Board expects a large increase in the number of voters who choose to vote absentee by mail this year, and creating an online portal for absentee voting would make it easier for voters to request an absentee ballot from home. The voter or near relative would provide identifying information (including the voter's date of birth and the last four digits of the voter's Social Security or drivers license number), and an electronic signature as defined in G.S. § 66-312 of the Uniform Electronic Transaction Act would be permitted. An allocation of funds to purchase a program or application to support this functionality may be needed.

- **Allow a voter to include a copy of a HAVA document with their absentee request form if the voter is unable to provide their drivers license number or last four digits of their Social Security number.** We recommend allowing a voter who did not include their drivers license number or the last four digits of their Social Security number the option to include a copy of a current utility bill, bank statement, government check, paycheck, or other government document showing the name and address of the voter. Making this change to G.S. § 163-230.2 would make it easier for those who wish to vote absentee by-mail to do so. The State Board has received multiple reports from county boards of elections and from voters that, without this option, some voters are no longer able to request an absentee ballot. This particularly affects senior citizens who may not have a drivers license number and cannot recall or do not have access to their Social Security number. Allowing this option will make it easier for those most at risk of contracting COVID-19 to vote absentee by mail.

- **Establish a fund to pay for postage for returned absentee ballots.** Elections officials across the nation are anticipating a surge in absentee voting in light of

2

Case 1:20-cv-00911-WO-JLW   Document 1-5   Filed 09/26/20   Page 3 of 7

restrictions on movement imposed due to the spread of COVID-19. Prepaid postage would increase the likelihood that a voter would return their ballot, would eliminate the need for a voter to leave their home to purchase postage, and would also decrease any incentive for a voter to turn their ballot over to someone else. Prepaid postage for the return of absentee ballots would also further enable residents and patients of facilities such as nursing homes and group homes to return their ballots safely, easily, and with minimal human contact.

- **Reduce or eliminate the witness requirement.** In light of social distancing requirements to prevent the spread of COVID-19, we recommend reducing the witness requirement for the certification on absentee container-return envelopes. Currently, a voter must have their absentee envelope signed by two witnesses or one notary. North Carolina residents are currently being asked to stay at home, and without a timeline for when the disease will be under control, requiring only one witness would reduce the likelihood that a voter would have to go out into the community or invite someone to their home to have their ballot witnessed. Eliminating the witness requirement altogether is another option and would further reduce the risk.

- **Modify procedure for counting of ballots on Election Day.** To allow county boards of elections more time to process the anticipated surge in absentee ballots, we recommend amending the law to provide that ballots received by the Saturday prior to the election must be counted on Election Day, and all other absentee ballots that are timely received will be counted on the day of the canvass. Currently, G.S. § 163-234(2) requires county boards to meet on Election Day to count all absentee ballots received by 5:00 p.m. on the day before the election. Changing the timeframe for when absentee ballots are counted would help ease the burden of an increased volume of absentee ballots, especially in larger counties. This change would not affect the deadline for the county boards to receive absentee ballots, nor would it affect which ballots are counted; rather, it would ameliorate the anticipated increase in absentee ballots received by county boards between the Saturday before the election and 5:00 p.m. on the day before the election. As part of this change, we also recommend extending county canvass to 14 days after the election, rather than 10 days after the election as provided in G.S. § 163-182.5(b), to allow county boards of elections sufficient time to count the large number of ballots that are anticipated being received; State Board canvass would also need to extended accordingly.

- **Temporarily modify restrictions on assistance in care facilities.** Currently, G.S. § 163-226.3(a)(4) makes it a Class I felony for an owner, director, manager, or employee of a hospital, clinic, nursing home, or adult care home to assist a voter in that facility in requesting, voting, or returning the voter's absentee ballot. There are important reasons to discourage facility employees from assisting patients and residents with their absentee requests and with voting their ballots. However, many localities are currently restricting or banning visitors to facilities, and an [Executive Order](#) issued by the Governor prevents visitors altogether to reduce the spread of COVID-19. With this in mind, it may not be possible for

3

multipartisan assistance teams (MATs), or others who would traditionally assist facility residents, to provide assistance. Individuals may also be unwilling to serve on MATs due to the increased risk of transmission of COVID-19 at a facility. Many voters in these facilities do require help with requesting, voting, and/or returning their ballots, and with no option available for assistance they may effectively be disenfranchised. We suggest considering options, such as temporarily allowing a facility employee to assist, to ensure these voters are able to continue to exercise their right to vote.

- **Clarify authorization for telephonic meetings.** It would be helpful to clarify that telephonic meetings and meetings held by other remote means are specifically authorized by the open meetings law. State Board counsel construe Article 33C of Chapter 143 to permit telephonic and other remotely held meetings. However, the UNC School of Government has a [different interpretation](#) of the law based on its stated familiarity with the law's history.

- **Expand student pollworker program.** We are recommending expanding the student pollworker program to allow students to fill the role of judge or chief judge, to allow juniors or seniors to serve as long as they are at least 16 years old, and to allow service as a pollworker to count as an approved school trip. Chief judges and judges would still be appointed from recommendations provided by the political parties. Currently, G.S. § 163-42.1 requires students be at least 17 years old and only allows them to serve in the role of precinct assistant. It also requires the principal of the student's school to recommend the student; we suggest this section include an exception to that requirement if the school is closed. These changes would increase the county boards of elections' recruitment of students, who tend to be less at risk of COVID-19. The changes will be especially necessary if large numbers of pollworkers are unable to serve. The average age of pollworkers in North Carolina is around 70 and the role requires significant interaction with the public, so we anticipate that pollworkers in at-risk categories may be advised not to serve or may be unable to serve this year.

- **Make Election Day a holiday.** Designating Election Day as a State holiday would expand the potential pool of pollworkers to students, teachers, and younger individuals. It would also encourage state and county employees to work the polls. These groups tend to be in a lower-risk category for COVID-19 and therefore would be an asset given current concerns. An alternative option would be to provide paid leave for state and county employees who serve as pollworkers and providing course credit for student pollworkers.

- **Increase pay for pollworkers.** Precinct officials safeguard the democratic process and help ensure confidence in the system. Increasing pay for pollworkers will help county boards of elections recruit and retain a strong elections workforce this year and for years to come. Current pay for precinct officials is the state minimum wage, $7.25 per hour. G.S. § 163-46. On Election Day, pollworkers must serve for the entire day without leaving the site—a shift of more than 14 hours. The minimum wage requirement was put in place in 1981 (see Session

4

Law 1981-796). Ensuring that pollworkers' unemployment benefits are not affected by their service is another way to increase recruitment efforts.

- **Eliminate requirement that a majority of pollworkers reside in precinct.** Eliminating the requirement in G.S. § 163-41(c) that a majority of pollworkers at a polling place must reside in the precinct would provide county boards of elections with greater flexibility to staff their precincts. It would increase the likelihood a county board of elections would be able to keep a polling place open rather than having to combine it with another polling place to meet the residency requirement.

- **Temporarily suspend purchase and contract requirements for elections-related supplies and other items.** To allow the State Board and county boards to continue operating in a time when many business and government entities have reduced capacity or have closed, temporarily lifting the purchase and contract requirements of Article 3 of Chapter 143 in 2020 would significantly speed up the ability to procure necessary supplies.

- **Match HAVA funds.** In order to receive federal elections security funds that were authorized in late 2019, the State must make a 20% match. This funding will be indispensable in our agency's continued effort to secure North Carolina's elections. This is true even more so as we react and respond to the pandemic, since times of crisis and uncertainty increase the threats of cyber attacks, phishing attempts, and scams. Federal authorities have also indicated these funds may be used for COVID-19 response efforts such as cleaning supplies and protective masks for staff and pollworkers, resources to meet an unanticipated increased demand for mail ballots due to self-isolation and quarantine in response to COVID-19, and temporary staff to process the increased absentee ballot demand. Funds may also be used for costs incurred to communicate law changes, such as changes in absentee-by-mail ballot rules, that could result from the pandemic. Exempting HAVA-funded positions at the State Board from a possible hiring freeze would also be important to ensuring the agency is able to continue to secure the statewide voter registration database and many other duties to protect North Carolina's elections from cyber threats.

- **One-Stop.** Consider whether changes to one-stop requirements, such as site and hour requirements, may be needed in light of the uncertainty regarding containment of the COVID-19 pandemic by the early voting period in October 2020. Currently, if any one-stop site is open all one stop-sites must be open and all sites other than the county board office must be open 8:00 a.m. to 7:30 p.m. County boards of elections need flexibility to determine hours because they are affected differently by, and respond differently to, the COVID-19 pandemic.

While the situation with COVID-19 is changing on a daily and sometimes hourly basis, we believe the above recommendations will help the elections that form the basis of North Carolina's democracy remain strong and resilient in these uncertain times.

5

We are appreciative of the appointment of the House Select Committee on COVID-19, Continuity of State Operations Working Group, and I stand ready to answer your questions or provide any other information that may be useful in consideration of these recommendations.

Sincerely,

Karen Brinson Bell
Executive Director
State Board of Elections