IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-507-D

TIMOTHY K. MOORE, et al.,          )
                                   )
                Plaintiffs,        )
                                   )
        v.                         )          **ORDER**
                                   )
DAMON CIRCOSTA, et al.,            )
                                   )
                Defendants.        )

On September 26, 2020, the Speaker of the North Carolina House of Representatives, Timothy K. Moore ("Moore"), the President Pro Tempore of the North Carolina Senate, Philip E. Berger ("Berger"), Bobby Heath ("Heath"), Maxine Whitley ("Whitley"), and Alan Swain ("Swain"; collectively, "plaintiffs") filed this action against Damon Circosta ("Circosta") in his official capacity as chair of the North Carolina State Board of Elections ("NCSBOE"), Stella Anderson ("Anderson") in her official capacity as a NCSBOE member, Jeff Carmon III ("Carmon") in his official capacity as a NCSBOE member, and Karen Brinson Bell ("Bell"; collectively, "defendants") in her official capacity as Executive Director of the NCSBOE alleging claims under 42 U.S.C. §1983 and the Elections Clause and Equal Protection Clause of the United States Constitution [D.E. 1]. On the same date, plaintiffs moved for a temporary restraining order [D.E. 8] and filed a memorandum in support [D.E. 9]. Specifically, plaintiffs contend that three memoranda NCSBOE issued on September 22, 2020, in conjunction with settlement negotiations (and ultimately a settlement on October 2, 2020) in a state court lawsuit concerning absentee ballots, violate the Elections Clause because the memoranda are inconsistent with the North Carolina General statutes and improperly

usurp legislative power to regulate federal elections. Additionally, plaintiffs contend that the three memoranda violate the Equal Protection Clause because the memoranda arbitrarily change the standards to determine the legality of an individual's vote harming plaintiffs that have voted already, and that the policies dilute the votes of those plaintiffs. See [D.E. 8] 5–22.

In Wise v. North Carolina State Board of Elections, No. 5:20-cv-505-D (E.D.N.C.) [hereinafter Wise], various plaintiffs from throughout North Carolina and other entities seek relief, inter alia, under 42 U.S.C. § 1983 and the Elections Clause, Article II, § 1, and the Equal Protection Clause. On October 2, 2020, the state court approved the settlement in the state court lawsuit, and Numbered Memo 2020-22 and Numbered Memo 2020-23 became effective. On the same date, this court held a hearing on plaintiffs' motion for a temporary restraining order in this case and in Wise. As explained below, the court grants plaintiffs' motion for a temporary restraining order in this case and in Wise, and transfers this case and Wise to the Honorable William L. Osteen, Jr., United States District Judge for the Middle District of North Carolina, for Judge Osteen's consideration of additional or alternative injunctive relief along with any such relief in Democracy North Carolina v. North Carolina State Board of Elections, No. 1:20-CV-457 (M.D.N.C.).

I.

For purposes of this temporary restraining order only, the court draws the facts largely from plaintiffs' complaint in this case and in Wise.[1] On March 10, 2020, Governor Roy Cooper declared a state of emergency due to the COVID-19 pandemic. On March 26, 2020, Bell submitted a letter to Governor Cooper and to legislative leaders recommending several "statutory changes" to North

---

[1] The court cites to the documents docketed in this case in the recitation of the facts. Any citations to the docket in Wise are underlined (e.g., [D.E. 3]) to distinguish a citation to the docket in this case.

2

Carolina's voting requirements. Bell asked that the General Assembly "[r]educe or eliminate the witness requirement" to "prevent the spread of COVID-19." See [D.E. 1-5]. Under N.C. Gen. Stat. § 163-231, to return a completed absentee ballot, a voter must have it witnessed and then mail or deliver the ballot in person, or have it delivered by commercial carrier. In addition, the voter, the voter's near relative, or the voter's verifiable legal guardian also can return the ballots in person. See N.C. Gen. Stat. § 163-231(b)(1).[2] The General Assembly has criminally prohibited any person other than the voter, the voter's near relative, or the voter's verifiable legal guardian from "return[ing] to a county board of elections the absentee ballot of any voter." N.C. Gen. Stat. § 163-226.3(a)(5).[3]

On June 11, 2020, the General Assembly overwhelmingly passed bipartisan legislation, the "Bipartisan Elections Act," adjusting the voting rules for the November 2020 election. See Bipartisan Elections Act of 2020, 2020 N.C. Sess. Laws 2020-17. Before passing the Bipartisan Elections Act, the General Assembly considered numerous proposals to adjust North Carolina election laws in light of the COVID-19 pandemic. For example, the General Assembly considered

---

[2] Section 163-231(b)(1) states, in full: "Transmitting Executed Absentee Ballots to County Board of Elections. - The sealed container-return envelope in which executed absentee ballots have been placed shall be transmitted to the county board of elections who issued those ballots as follows: (1) All ballots issued under the provisions of this Article and Article 21A of this Chapter shall be transmitted by mail or by commercial courier service, at the voter's expense, or delivered in person, or by the voter's near relative or verifiable legal guardian and received by the county board not later than 5:00 p.m. on the day of the statewide primary or general election or county bond election. Ballots issued under the provisions of Article 21A of this Chapter may also be electronically transmitted." N.C. Gen. Stat. § 163-231(b)(1) (emphasis added).

[3] Section 163-226.3(a)(5) states, in full: "Any person who shall, in connection with absentee voting in any election held in this State, do any of the acts or things declared in this section to be unlawful, shall be guilty of a Class I felony. It shall be unlawful: . . . (5) For any person to take into that person's possession for delivery to a voter or for return to a county board of elections the absentee ballot of any voter, provided, however, that this prohibition shall not apply to a voter's near relative or the voter's verifiable legal guardian." N.C. Gen. Stat. § 163-226.3(a)(5) (emphasis added).

3

the NCSBOE's proposal to eliminate the witness requirement for absentee ballots and to instead adopt a signature-matching software. The General Assembly was also aware of potential delivery issues concerning mail-in absentee ballots. Additionally, two recent voting experiences informed the General Assembly's choices. First, the General Assembly had information concerning voting processes in primary elections conducted during a pandemic. Second, the General Assembly was painfully aware of the massive absentee-ballot fraud that occurred in the 2018 election for North Carolina's Ninth Congressional District. The scope and extent of the absentee-ballot fraud in that election required North Carolina to invalidate the election results and conduct a new election.

On June 12, 2020, Governor Cooper signed the Bipartisan Elections Act into law. As relevant here, the Bipartisan Elections Act changed the witness requirements for absentee ballots. Specifically, the act provides:

> For an election held in 2020, notwithstanding G.S. 163-229(b) and G.S. 163-231(a), and provided all other requirements for absentee ballots are met, a voter's returned absentee ballot shall be accepted and processed accordingly by the county board of elections <u>if the voter marked the ballot in the presence of at least one person who is at least 18 years of age</u> and is not disqualified by G.S. 163-226.3(a)(4) or G.S. 163-237(c), <u>provided that the person signed the application and certificate as a witness and printed that person's name and address on the container-return envelope.</u>

N.C. Sess. Laws 2020-17 § 1.(a) (emphasis added). The Bipartisan Elections Act did not change the requirements concerning who may return an absentee ballot in section 163-231 or the criminal prohibition concerning the same in section 163-226.3(a)(5). It also did not change several provisions relevant to this lawsuit. Specifically, the Bipartisan Elections Act did not change the provision that sets the a deadline for receipt of absentee ballots: "The ballots issued under this Article are postmarked and that postmark is dated on or before the day of the statewide primary or general election or county bond election <u>and are received by the county board of elections not later than three days after the election by 5:00 p.m.</u>" N.C. Gen. Stat. § 163-231(b)(2)(b) (emphasis added).

4

After the General Assembly enacted and the Governor signed the Bipartisan Elections Act, litigation ensued in the United States District Court for the Middle District of North Carolina in which plaintiffs in that case challenged numerous provisions of the Bipartisan Elections Act and North Carolina election laws. On August 4, 2020, after holding extensive hearings, the Honorable William L. Osteen, Jr., issued a comprehensive 188-page order largely upholding various North Carolina election laws applicable in this election (including the witness requirement), but requiring a procedural due process remedy to provide a "voter with notice and opportunity to be heard before a delivered absentee ballot is disallowed or rejected." See Democracy N.C. v. N.C. State Bd. of Elections, No. 1:20-CV-457, — F. Supp. 3d —, 2020 WL 4484063, at *62 (M.D.N.C. Aug. 4, 2020) [hereinafter Democracy N.C.]. On September 3, 2020, a three-judge panel on the Wake County Superior Court denied injunctive relief to plaintiffs in that case seeking, inter alia, to enjoin enforcement of the witness requirement for casting absentee ballots under N.C. Gen. Stat. § 163-231 and N.C. Sess. Laws 2020-17. See Chambers v. North Carolina, 20CVS500124 (N.C. Sup. Ct. Sept. 3, 2020) (three-judge court).

On August 10, 2020, the North Carolina Alliance for Retired Americans and seven individual North Carolina voters (the "Alliance plaintiffs") filed suit in Wake County Superior Court against the NCSBOE and Circosta seeking declaratory and injunctive relief concerning several North Carolina election statutes. On the same date, the Alliance plaintiffs moved for a preliminary injunction. See [D.E. 1-2] 3. Berger and Moore intervened in the Alliance plaintiffs' suit in their respective official capacities. On August 18, 2020, the Alliance plaintiffs amended their complaint. See [D.E. 1-10]. The Alliance plaintiffs asked the court to "[s]uspend the Witness Requirement for single-person or single-adult households" and "[r]equire election officials to count all absentee ballots mailed through USPS and put in the mail by Election Day if received by county boards up

5

to nine days after Election Day." See id. at 5. Under the North Carolina General Statutes, an absentee ballot is timely if "postmarked and that postmark is dated on or before the day of the statewide primary or general election or county bond election and are received by the county board of elections not later than three days after the election by 5:00 p.m." N.C. Gen. Stat. § 163-231(b)(2)(b). The Alliance plaintiffs also asked the court to "[p]reliminarily and temporarily enjoin the enforcement of the" criminal prohibition on delivering another voter's absentee ballot under section 163-226.3(a)(5). See [D.E. 1-9] 42.

On August 21, 2020, the NCSBOE issued Numbered Memo 2020-19 (the "August 2020-19 memo"). See [D.E. 1-4]. In that memo, the NCSBOE confirmed the statutory deadlines for absentee ballots. See id. at 5, ¶ 4. The NCSBOE also stated that a voter may cure two absentee ballot defects with a voter affidavit: (1) "Voter did not sign the Voter Certification"; and (2) "Voter signed in the wrong place." Id. at 3, ¶ 2.1. Additionally, the NCSBOE stated that five absentee ballot defects (four concerning the witness requirement) cannot be cured by a voter affidavit "because the information comes from someone other than the voter." Id. These defects include: (1) "Witness or assistant did not print name"; (2) "Witness or assistant did not print address"; (3) "Witness or assistant did not sign"; (4) "Witness or assistant signed on the wrong line"; (5) "Upon arrival at the county board office, the envelope is unsealed or appears to have been opened and resealed." Id. at 3, ¶ 2.2. If a voter's absentee ballot contains one or more of these five defects, the county board spoils the voter's absentee ballot and reissues a ballot, sending the reissued ballot and notice to the voter. Id. The August 2020-19 memo also has a procedural due process cure provision. See id. at 3–4, ¶¶ 3–5. Additionally, the August 2020-19 memo confirmed that "because of the requirements about who can deliver a ballot, and because of the logging requirements, an absentee ballot may not be left in an unmanned drop box." Id. at 6, ¶ 6.2.

6

On August 21, 2020, when the NCSBOE issued the August 2020-19 memo, the state court had not issued an order resolving the _Alliance_ plaintiffs' request for injunctive relief. On September 4, 2020, the election began when the NCSBOE began issuing absentee ballots to voters.

On September 22, 2020, the NCSBOE and the _Alliance_ plaintiffs submitted to the state court a proposed consent judgment with three exhibits. See [D.E. 1-2]. The exhibits contain three memoranda from Bell that detail material changes to the on-going election and deviate from the statutory scheme. The last two exhibits became operative upon the state court's approval of the consent judgment on October 2, 2020. The three memoranda are Numbered Memo 2020-19 (the "September 2020-19 memo"; i.e., the revised version of the August 2020-19 memo issued on August 21, 2020 and revised on September 22, 2020), Numbered Memo 2020-22, and Numbered Memo 2020-23 (collectively, the "memoranda").

The September 2020-19 memo "directs the procedure county boards must use to address deficiencies in absentee ballots." Specifically, if a "witness . . . did not print name," "did not print address," "did not sign," or "signed on the wrong line," the NCSBOE considers that error a "deficiency" and would allow the absentee voter to "cure". [D.E. 1-2] 33. A voter cures such a deficiency through a "certification," which is a form the county board of elections sends to a voter that requires the voter to sign and affirm the following:

> I am an eligible voter in this election and registered to vote in [name] County, North Carolina. I solemnly swear or affirm that I requested, voted, and returned an absentee ballot for the November 3, 2020 general election and that I have not voted and will not vote more than one ballot in this election. I understand that fraudulently or falsely completing this affidavit is a Class I felony under Chapter 163 of the North Carolina General Statutes.

[D.E. 1-2] 37. Notwithstanding Judge Osteen's order of August 4, 2020, this change eliminates the

7

statutory witness requirement for such a voter.[4]

Numbered Memo 2020-22 states that a ballot is timely "if it is either (1) received by the county board by 5:00 p.m. on Election Day; or (2) the ballot is postmarked on or before Election Day and <u>received by nine days after the election, which is Thursday, November 12, 2020 at 5:00 p.m.</u>" <u>Id.</u> at 29 (emphasis added). Additionally, Numbered Memo 2020-22 states: "For remaining elections in 2020, a ballot shall be considered postmarked by Election Day if it has a postmark affixed to it or if there is information in BallotTrax, or another tracking service offered by the USPS or a commercial carrier, indicating that the ballot was in the custody of USPS or the commercial carrier on or before Election Day." <u>Id.</u> at 30. This numbered memo changes the statutory deadline for absentee ballots.

Numbered Memo 2020-23 concerns "In-Person Return of Absentee Ballots." <u>Id.</u> at 39. In relevant part, it states: "Only the voter, or the voter's near relative or legal guardian, is permitted to possess an absentee ballot. . . . **Because of this provision in the law, an absentee ballot may not be left in an unmanned drop box.** . . . The county board shall ensure that, if they have a drop box, slot, or similar container at their office, the container has a sign indicating that absentee ballots may not be deposited in it." <u>Id.</u> at 39 (emphasis in original). Two pages later, Numbered Memo 2020-23 states: "Intake staff shall accept receipt of all ballots provided to them, even if information is missing or someone other than the voter or their near relative or legal guardian returns the ballot. . . . If your site has a mail drop or drop box used for other purposes, <u>you must affix a sign stating that voters may not place their ballots in the drop box. However, a county board may not disapprove</u>

---

[4] At the October 2, 2020 hearing in this court, NCSBOE's counsel confirmed this understanding of the September 2020-19 memo cure provisions. When the court asked NCSBOE's counsel whether the September 2020-19 memo's voter certification cure applied to an absentee ballot on which all witness information was missing, NCSBOE's counsel responded that it did.

a ballot solely because it is placed in a drop box." Id. at 40–41 (emphasis added). This numbered memo eliminates the requirement that only the voter, the voter's near relative, or the voter's verifiable guardian may deliver the absentee ballot.

As mentioned, on September 4, 2020, the election began in North Carolina when the NCSBOE began mailing absentee ballots to voters. The first date on which NCSBOE reports absentee ballots cast is September 4, 2020. As of September 22, 2020, at 4:40 a.m., North Carolina voters had cast 153,664 absentee ballots. As of October 2, 2020, at 4:40 a.m., North Carolina voters had cast 319,209 ballots. See North Carolina State Board of Elections, N.C. Absentee Statistics for the 2020 General Election, https://s3.amazonaws.com/dl.ncsbe.gov/Press/NC%20Absentee% 20Stats%20for%202020%20General%20Election/Absentee_Stats_2020General_10022020.pdf (last visited Oct. 2, 2020). The plaintiff voters in this case (Heath and Whitley) and one plaintiff voter in Wise (Patsy J. Wise) cast their absentee ballots and had them accepted before the Alliance plaintiffs filed notice of the consent judgment in the state court lawsuit on September 22, 2020.

On September 28, 2020, this court held a status conference in this case. At the status conference, NCSBOE's counsel stated that the NCSBOE issued the September 2020-19 memo (dated September 22, 2020) "in order to comply with Judge Osteen's preliminary injunction in the Democracy N.C. action in the Middle District." This court asked NCSBOE's counsel whether NCSBOE had submitted the September 2020-19 memo to Judge Osteen and explained to Judge Osteen why the NCSBOE issued it. NCSBOE's counsel replied that the NCSBOE had not submitted the September 2020-19 memo to Judge Osteen, but that it was on counsel's list "to get done today." On September 28, 2020, the NCSBOE filed the September 2020-19 memo with the Middle District of North Carolina.

9

On September 30, 2020, Judge Osteen issued an order stating that the September 2020-19 memo is not "consistent with [his] order entered on August 4, 2020." See Order, Democracy N.C., No. 1:20-CV-457 [D.E. 145] 3 (M.D.N.C. Sept. 30, 2020). Judge Osteen scheduled a hearing for October 7, 2020, at 12:00 p.m. Id. [D.E. 149]. On September 30, 2020, plaintiffs in Democracy N.C. filed a motion and memorandum in the Middle District seeking to enforce order granting in part preliminary injunction, or in the alternative, motion for clarification, and to expedite. See Democracy N.C., No. 1:20-CV-457 [D.E. 147, 148] (M.D.N.C. Sept. 30, 2020). On October 1, 2020, the NCSBOE issued Numbered Memo 2020-27 discussing Judge Osteen's order of September 30, 2020. See [D.E. 40-2]. Numbered Memo 2020-27 states that, "to avoid confusion while related matters are pending in a number of courts, . . . [c]ounty boards that receive an executed absentee container-return envelope with a missing witness signature shall take no action as to that envelope." Id. at 2. Numbered Memo 2020-27 also states that "[i]n all other respects, Numbered Memo 2020-19, as revised on September 22, 2020 [i.e., the September 2020-19 memo], remains in effect." Id.

On October 1, 2020, Judge Osteen asked for expedited briefing on whether, inter alia, "the court should consider restraining Defendant North Carolina State Board of Elections' actions taken pursuant to Memo 2020-19 (Doc. 143-1), in light of the earlier version of that memorandum issued on August 21, 2020," and established a deadline of 12:00 p.m. on October 2, 2020, for such briefing. See Democracy N.C., No. 1:20-CV-457 [D.E.149] (M.D.N.C. Oct. 1, 2020). On October 2, 2020, Legislative defendants in Democracy N.C. asked Judge Osteen to enjoin the September 2020-19 memo and to permit the August 2020-19 memo (dated August 21, 2020) to be operative. See id. [D.E. 150].

On October 2, 2020, at 5:00 p.m., this court held a hearing on the pending TRO motions in this case and Wise. At that hearing, NCSBOE's counsel stated that the state court judge in Alliance

10

had approved the consent judgment in that case. See [D.E. 45-1] (attaching a copy of the consent judgment, which was approved at 4:08 p.m.). NCSBOE's counsel referenced the notice filed with this court shortly before the hearing notifying the court that the state court entered a consent judgment in Alliance. See [D.E. 45]. NCSBOE's counsel stated that the consent judgment attached to the notice at docket entry 45 was a true and accurate copy of the consent judgment the state court judge entered, and that the attached consent judgment was identical to the proposed consent judgment plaintiffs submitted with their complaint in this case. Cf. [D.E. 1-2].

During the hearing on October 2, 2020, the court learned that Judge Osteen filed an extensive order requesting additional briefing on certain constitutional questions, the need for additional injunctive relief, how Purcell v. Gonzalez, 549 U.S. 1 (2006) (per curiam), might apply, and the definition of "material error subject to remediation." See Democracy N.C., [D.E. 152] 1–8. Motions for injunctive relief in Democracy N.C. are due October 5, 2020, by 5:00 p.m. Responses in Democracy N.C. are due by 4:00 p.m. on October 6, 2020. Judge Osteen will hold oral argument on October 7, 2020, at 2:00 p.m. After the hearing, the court took plaintiffs' motions for a temporary restraining order in this case and in Wise under advisement. Numerous intervention motions are pending in this case and Wise, including from the plaintiffs in the Democracy N.C. action and the state-court action.

II.

The court has considered plaintiffs' request for a temporary restraining order under the governing standard. See, e.g., Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Centro Tepeyac v. Montgomery Cty., 722 F.3d 184, 188 (4th Cir. 2013) (en banc); Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reissued in relevant part, 607 F.3d 355 (4th Cir. 2010) (per curiam); U.S. Dep't of Labor v.

11

Wolf Run Mining Co., 452 F.3d 275, 281 n.1 (4th Cir. 2006) (substantive standard for temporary restraining order is same as that for entering a preliminary injunction).

For purposes of this order only, the court need not address plaintiffs' claim in this case under the Elections Clause, or the Wise plaintiffs claims under the Elections Clause or Article II, § 1. Moreover, the court has considered the parties' arguments in this case and in Wise made both in the papers and at the hearings. The court finds plaintiffs' arguments concerning the Equal Protection Clause persuasive. In short, the court grants plaintiffs' motion in this case and in Wise for a temporary restraining order based on the Equal Protection Clause for the reasons stated in plaintiffs' papers and at the October 2, 2020 hearing. Plaintiff voters in this case and in Wise have established that (1) they are likely to succeed on the merits of their claims that the provisions in the memoranda violate the plaintiff voters' rights under the Equal Protection Clause; (2) they are likely to suffer irreparable harm absent a temporary restraining order; (3) the balance of the equities tips in their favor; and (4) a temporary restraining order is in the public interest.

Under the Fourteenth Amendment of the Constitution, a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Fourteenth Amendment is one of many provisions of the Constitution that "protects the right of all qualified citizens to vote, in state as well as federal elections." Reynolds v. Sims, 377 U.S. 533, 554 (1964); see Bush v. Gore, 531 U.S. 98, 104–05 (2000) (per curiam). "The right to vote is more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise." Bush, 531 U.S. at 104; see Wright v. North Carolina, 787 F.3d 256, 259, 263–64 (4th Cir. 2015); Hunter v. Hamilton Cty. Bd. of Elections, 635 F.3d 219, 234 (6th Cir. 2011).

The Supreme Court has identified two, separate frameworks for analyzing challenges to state voting laws and policies under the Fourteenth Amendment: (1) the framework identified in

12

Reynolds and Bush (hereinafter the "Reynolds-Bush" framework); and (2) the framework identified in Anderson v. Celebrezze, 460 U.S. 780 (1983), and Burdick v. Takushi, 504 U.S. 428 (1992) (hereinafter the "Anderson-Burdick" framework). See Marcellus v. Va. State Bd. of Elections, 849 F.3d 169, 180 n.2 (4th Cir. 2017); Libertarian Party of Va. v. Alcorn, 826 F.3d 708, 716–17 (4th Cir. 2016); Wright, 787 F.3d at 263–64.

The Reynolds-Bush framework addresses two principle harms under the Fourteenth Amendment. The first of those two harms is "a debasement or dilution of the weight of a citizen's vote." Reynolds, 377 U.S. at 555; see id. at 567 ("To the extent that a citizen's right to vote is debased, he is that much less a citizen."); see also Bush, 531 U.S. at 105 ("It must be remembered that the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." (quotation omitted)); Baker v. Carr, 369 U.S. 186, 207–08 (1962); Raleigh Wake Citizens Ass'n v. Wake Cty. Bd. of Elections, 827 F.3d 333, 337–38 (4th Cir. 2016); Wright, 787 F.3d at 259, 263–64; cf. Anderson v. United States, 417 U.S. 211, 226–27 (1974); Wesberry v. Sanders, 376 U.S. 1, 17 (1964) ("Not only can [the right to vote] not be denied outright, it cannot, consistently with Article I, be destroyed by alteration of ballots or diluted by stuffing of the ballot box."); id. at 8 ("We hold that, construed in its historical context, the command of Art. I, s 2, that Representatives be chosen 'by the People of the several States' means that as nearly as is practicable one man's vote in a congressional election is to be worth as much as another's." (footnotes omitted)).

The second harm that the Fourteenth Amendment prohibits and that is addressed under the Reynolds-Bush framework is the "arbitrary or disparate treatment of members of [the state's] electorate." Bush, 531 U.S. at 105; see id. at 104–05 ("Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote

13

over that of another."); Dunn v. Blumenstein, 405 U.S. 330, 336 (1972); Hadley v. Junior Coll. Dist. of Metro. Kan. City, 397 U.S. 50, 56 (1970) ("We therefore hold today that as a general rule, whenever a state or local government decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election . . . ."); Harper v. Va. Bd. of Elections, 383 U.S. 663, 665 (1966) ("[O]nce the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment."); Gray v. Sanders, 372 U.S. 368, 380 (1963). To that end, a state must have "specific rules designed to ensure uniform treatment" of a voter's ballot. Bush, 531 U.S. at 106; see Dunn, 405 U.S. at 336 ("[A] citizen has a constitutionally protected right to participate in the elections on an equal basis with other citizens in the jurisdiction."); Gray, 372 U.S. at 380 ("[T]he Constitution visualizes no preferred class of voters but equality among those who meet the basic qualifications.").

Plaintiff voters' claims under the Equal Protection Clause raise profound questions concerning arbitrariness and vote dilution. The election in North Carolina began on September 4, 2020. On that date, the August 2020-19 memo was legally operative and consistent with Judge Osteen's comprehensive order of August 4, 2020. The August 2020-19 memo included the statutory witness requirement, the statutory absentee ballot deadline, the statutory requirement concerning who could deliver absentee ballots, and a procedural due process cure for absentee voters.

By September 22, 2020, over 150,000 North Carolina voters—including plaintiffs Heath and Whitley in this case, and plaintiff Wise in Wise—had cast absentee ballots under the statutory scheme and the August 2020-19 memo. On October 2, 2020, however, after the election started and 319,209 North Carolina voters had cast absentee ballots, the NCSBOE materially changed the rules under which the election was taking place. Specifically, the September 2020-19 memo, Numbered

14

Memo 2020-22, and Numbered Memo 2020-23 eliminate the statutory witness requirement, change the statutory dates and method by which absentee ballots are accepted, and change the statutory scheme as to who can deliver absentee ballots. At bottom, the NCSBOE has ignored the statutory scheme and arbitrarily created multiple, disparate regimes under which North Carolina voters cast absentee ballots, and plaintiff voters in this case and in <u>Wise</u> are likely to succeed on their claims under the Equal Protection Clause.

The NCSBOE inequitably and materially upset the electoral status quo in the middle of an election by issuing the memoranda and giving the memoranda legal effect via the October 2, 2020 consent judgment. The court issues this temporary restraining order to maintain the status quo. <u>Cf.</u> <u>Purcell,</u> 549 U.S. at 4–6. Additionally, the constitutional harm of which plaintiff voters complain would be irreparable absent a temporary restraining order in this case and <u>Wise</u>. The public has a distinct interest in ensuring that plaintiffs' voting rights under the Constitution are secure. <u>See</u> <u>Giovanni Carandola, Ltd. v. Bason,</u> 303 F.3d 507, 521 (4th Cir. 2002); <u>see also</u> <u>Legend Night Club</u> <u>v. Miller,</u> 637 F.3d 291, 302–03 (4th Cir. 2011) ("Maryland is in no way harmed by issuance of an injunction that prevents the state from" violating the Constitution). "[P]ublic confidence in the integrity of the electoral process" is of paramount importance. <u>Crawford v. Marion Cty. Election</u> <u>Bd.,</u> 553 U.S. 181, 197 (2008). The memoranda, by materially changing the electoral process in the middle of an election after over 300,000 people have voted, undermines that confidence and creates confusion for those North Carolinians who have yet to cast their absentee ballots. In contrast, the relief plaintiff voters seek temporarily restores the status quo for absentee voting in North Carolina until the court can assess this case and the <u>Wise</u> case on a fuller record.

In opposition, defendants in this case raise various procedural arguments to plaintiffs' motion for a temporary restraining order. <u>See</u> [D.E. 31]. The court rejects those arguments at this early

stage in the litigation for the reasons stated in plaintiffs' comprehensive reply brief and at oral argument. See [D.E. 40-1].

Plaintiff voters in this case and in Wise have established that the Winter factors warrant a temporary restraining order in their favor. Thus, the court grants a temporary restraining order in this case and in Wise.

## III.

As for defendants' previous motion to transfer venue in this case [D.E. 14], the court entered an order denying the motion on September 30, 2020 [D.E. 26]. Upon reconsideration of the record in this case, Wise, and Democracy N.C., the court finds that transferring this action and the Wise action to the Honorable William L. Osteen, Jr., pursuant to the first-filed rule better comports with Fourth Circuit precedent and the interests of justice.[5]

The Fourth Circuit recognizes the "first-filed" rule. See, e.g., Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co., 736 F.3d 255, 258 & n.1 (4th Cir. 2013); Ellicott Mach. Corp. v. Modern Welding Co., 502 F.2d 178, 180–82 (4th Cir. 1974); Golden Corral Franchising Sys., Inc. v. GC of Vineland, LLC, No. 5:19-CV-255-BO, 2020 WL 1312863, at *2 (E.D.N.C. Mar. 17, 2020) (unpublished); Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003). According to the first-filed rule, a district court has an independent, equitable basis for transferring an action where "sound judicial administration counsels against separate proceedings, and the wasteful expenditure of energy and money" in separate litigation. Blue Stuff, 264 F. Supp. 2d at 360 (quoting Columbia Plaza Corp. v. Security Nat'l Bank, 525 F.2d 620, 626 (D.C. Cir.

---

[5] Although this court cited In re Bozic, 888 F.3d 1048, 1054 (9th Cir. 2018), in its order denying defendants' motion to transfer, [D.E. 26], that case is not controlling precedent in the Fourth Circuit. Moreover, numerous developments in this case, Wise, and Democracy N.C. during the last six days demonstrate the wisdom of the Fourth Circuit's first-filed rule.

Case 1:20-cv-00911-WO-JLW   Document 47   Filed 10/03/20   Page 16 of 20

1975)); see Hartford Fire, 736 F.3d at 258 n.1 ("[W]e note that [a] court [is] free to raise the issue of the first-to-file rule sua sponte."). The "first-filed" rule provides that where parties "have filed similar litigation in separate federal fora, doctrines of federal comity dictate that the matter should proceed in the court where the action was first filed, and that the later-filed action should be stayed, transferred, or enjoined." Blue Stuff, 264 F. Supp. 2d at 360.

Courts have recognized three factors to consider "in determining whether to apply the first-filed rule: 1) the chronology of the filings, 2) the similarity of the parties involved, and 3) the similarity of the issues at stake." Id. "[T]he parties need not be perfectly identical in order for the first-filed rule to apply." Golden Corral, 2020 WL 1312862, at * 2; see Troce v. Bimbo Foods Bakeries Distrib., Inc., No. 3:11CV234-RJC-DSC, 2011 WL 3565054, at *3 (W.D.N.C. Aug. 12, 2011) (unpublished). Issues in separate cases are similar when they "bear on a common question." Berger v. United States DOJ, Nos. 5:16-CV-240-FL, 5:16-CV-245-FL, 2016 U.S. Dist. LEXIS 84536, at *32 (E.D.N.C. June 29, 2016) (unpublished).

Notwithstanding plaintiffs' initial choice of forum, the "first-filed" rule counsels in favor of transferring this case and the Wise case to Judge Osteen in the Middle District of North Carolina. Judge Osteen is currently presiding over Democracy N.C. That case was filed over four months before proceedings commenced in these actions. Additionally, the parties in all three cases are similar. Plaintiffs Moore and Berger are parties to this action and the Democracy N.C. action and are seeking injunctive relief in each action.[6] And defendants Circosta, Anderson, Carmon, and Bell

---

[6] Although plaintiffs in the Wise case are not parties to this action or Democracy N.C., this incongruity is outweighed by the fact that at least one plaintiff in Wise, Samuel Grayson Baum, resides in the Middle District of North Carolina and, with the consent of defendants, could have brought his action in that court in the first instance. See 28 U.S.C. § 1404(a); Wise, No. 5:20-CV-505 [D.E. 1].

Case 1:20-cv-00911-WO-JLW   Document 47   Filed 10/03/20   Page 17 of 20

are defendants in all three cases.[7]  Furthermore, this case, <u>Wise</u>, and <u>Democracy N.C.</u> present substantially similar issues that "bear on a common question," i.e., defendants' initial conduct in setting the rules for North Carolina's 2020 election in accordance with Judge Osteen's order and the statutory scheme, and their conduct in changing those rules while subject to Judge Osteen's order. Notably, in <u>Democracy N.C.</u>, Judge Osteen upheld the witness requirement and various other election requirements.  Defendants issued the August 2020-19 memo in response to Judge Osteen's order, and the election began under the statutory scheme and the August 2020-19 memo.  The September 2020-19 memo, however, eliminated the witness requirement.  Moreover, Judge Osteen was not aware of the September 2020-19 memo until NCSBOE's counsel filed it in <u>Democracy N.C.</u> on Monday, September 28, 2020, after prompting from this court.  The orders Judge Osteen issued following NCSBOE counsel's filing of the September 2020-19 memo illuminated the commonality of issues in <u>Democracy N.C.</u>, <u>Wise</u>, and this action.  Furthermore, there are no "special circumstances," such as forum shopping or bad faith filings, that cut against transferring this action under the first-filed rule.  <u>Blue Stuff</u>, 264 F. Supp. 2d at 360.

Equitable factors also counsel transferring this action to Judge Osteen.  Judge Osteen has been presiding over the <u>Democracy N.C.</u> action, involving similar parties and an overarching similar issue, for over four months.  He conducted a two-day evidentiary hearing and issued a 188-page order granting in part the plaintiffs' motion for a preliminary injunction, largely upholding the statutory scheme for this election (including the witness requirement).  <u>See</u> <u>Democracy N.C.</u>, 2020 WL 4484063, at *1.  As of October 2, 2020, Judge Osteen issued an expedited briefing order in that

---

[7] Although plaintiffs Heath, Whitley, and Swain in this action and voter plaintiffs in <u>Wise</u> are not parties to <u>Democracy N.C.</u>, transferring a case under the first-filed rule does not require that the parties be "perfectly identical."  <u>Golden Corral</u>, 2020 WL 1312862, at * 2; <u>see</u> <u>Troce</u>, 2011 WL 3565054, at *3.

Case 1:20-cv-00911-WO-JLW   Document 47   Filed 10/03/20   Page 18 of 20

case and ordered any party "requesting affirmative relief," including "injunctive relief," to "file a motion setting out the basis for that relief[]" no later than 5:00 p.m. on October 5, 2020. See Democracy N.C., [D.E. 152] 8–9. Allowing Judge Osteen to consider these actions together (even if not consolidated) constitutes "sound judicial administration" and avoids "wasteful expenditure of energy" and confusion as contemplated by the first-filed rule. See Blue Stuff, 264 F. Supp. 2d at 360. It also allows expeditious resolution of requests for injunctive relief and avoids multiple federal courts imposing potentially conflicting preliminary or permanent injunctions concerning this election. Accordingly, this court transfers this action and the Wise action to Judge Osteen in the Middle District of North Carolina.

IV.

In sum, the court GRANTS plaintiffs' emergency motion for a temporary restraining order in this case [D.E. 8] and in Wise [D.E. 3]. Defendants are TEMPORARILY ENJOINED from enforcing the September 2020-19 memo, Numbered Memo 2020-22, Numbered Memo 2020-23, or any similar memoranda or policy statement that does not comply with the requirements of the Equal Protection Clause. This order does not enjoin or affect the August 2020-19 memo. This temporary restraining order shall be in effect until no later than October 16, 2020, and is intended to maintain the status quo. See Fed. R. Civ. P. 65(b)(2). No bond is required. Cf. Fed. R. Civ. P. 65(c).

The court also TRANSFERS this action and Wise v. North Carolina State Board of Elections, No. 5:20-CV-505 (E.D.N.C.), to the Honorable William L. Osteen, Jr., United States District Judge in the Middle District of North Carolina for consideration along with Democracy North Carolina v. North Carolina State Board of Elections, No. 1:20-CV-457 (M.D.N.C.). Judge Osteen has authority to terminate or modify this temporary restraining order, and this court is confident that Judge Osteen will schedule promptly, as needed, any preliminary injunction hearing or any hearing concerning

injunctive relief in this case, the Wise case, and the Democracy N.C. case. Having one federal judge preside over these three actions expedites final resolution of the dispute in this case, Wise, and Democracy N.C., helps to minimize voter confusion in this election, and helps to ensure that defendants are not subject to conflicting federal court orders in this election.

SO ORDERED. This 3 day of October 2020.

JAMES C. DEVER III
United States District Judge